## CENTRAL LIFE ASSUR. SOC. (MUTUAL) v. GRAY et al.

### No. 938.

Court of Civil Appeals of Texas. Waco.

Oct. 9, 1930.

Rehearing Denied Nov. 13, 1930.

Coker, Wilson, Rhea & Neel, of Dallas, for appellant.

McLean, Scott & Sayers and Chas. T. Prewett, all of Fort Worth, for appellees.

GALLAGHER, C. J.

Appellant, Central Life Assurance Society (Mutual), a judgment creditor of appellee J. C. Gray, caused an execution issued on its judgment to be levied by George Simmons, sheriff of Hill county, upon a certain tract of land situated in said county, consisting of 123½ acres and belonging to appellee. Appellee, joined by his wife, Bess Gray, brought this suit against appellant and said sheriff to enjoin the sale of said property under said writ, on the ground that the same at the time of the levy thereof constituted his homestead.

Appellee testified, in substance, that he came to Hill county from Mississippi; that his father died in Mississippi in 1891, when he was about 22 years old; that he was the oldest son; that, after the death of his father, his mother having died long prior thereto, his family consisted of an unmarried sister, three younger brothers, and himself, and that they all lived together as one family; that two of

said brothers married and moved away while they lived in said state; that he came to Hill county in 1901 and bought the tract of land involved in this suit as a home for his family, which at that time consisted of his said sister and youngest brother; that he was then taking care of both of them; that his brother was 22 years old and able-bodied, but was wild and dissipated, and he was trying to get him to settle down; that he moved onto said land with his said family in the latter part of 1902, and that they all continued to reside thereon for four years thereafter; that his sister was then about 40 years of age; that she lived with him and kept house for him and his brother, and that his money took care of her; that his physical condition became very bad, and it appeared that he would die if he remained there; that on account of such condition he went to Tioga, Tex., to try the mineral water there, and was still using same; that when he went to Tioga he broke up housekeeping, and his sister went to live with another brother who had theretofore moved to Hill county; that he, his sister, and his brother discussed the situation and recognized that his state of health made it absolutely necessary to leave that place; that he intended to return thereto just as soon as his health would permit, and that such was the intention of other members of his family, and the understanding between them; that his sister never married, and that he contributed to her support while she lived with such other brother; that she was dissatisfied and came and stayed with him at Tioga about a year, and then returned to said other brother; that she died a short time before the trial of this case.

Appellee further testified that he was married in 1922, and that a child was born of such marriage; that he had always intended and still intended to return and reside on the land in controversy as his permanent home as soon as his health would permit; that he and his wife planned to start a chicken ranch thereon; that the house had burned down some time before, and that he had never been able to rebuild it, though he had tried ineffectually to arrange for funds to do so; that he had always rented the place from year to year and never for a longer period. He further testified that the continued use of the mineral water at Tioga had been necessary ever since he moved there; that he got better at first and was able to conduct an undertaking business there for a number of years; that he boarded all the time both before and after his marriage, until about two years before he removed there, during which last two years he resided in a rented house with his family; that about a year before the trial he went to Handley, Tex.; that while there he lived in a rented house; that he was unable to work and could do nothing but stay at the house and take care of the baby so his wife could work in a department store. Mrs. Gray testified that she had known appellee since he first came to Tioga; that she remembered when his sister lived with him there; that they were both boarding at the time, and she knew that appellee paid his sister's board and claimed that she was dependent on him. She further testified to appellee's delicate health and his continued use of the water and the necessity therefor, and that they had always claimed the land in controversy as their home and intended to remove thereto as soon as possible. Appellee introduced the testimony of other witnesses, who testified to his continual claiming of the land in controversy as his homestead. There was testimony that appellee voted in elections while he resided in Tioga, and that he acquired an equity in a tract of land in Grayson county, but that he never resided on the same and had disposed thereof some time before the levy of the writ in this case. Appellee never resided on the land in controversy after he left the same for Tioga in 1906.

The case was tried before a jury. The court overruled appellant's request for an instructed verdict and submitted the case upon special issues. Appellant makes no complaint of the manner of submission. The jury found in response to such issues, in substance, that the land in controversy was on July 3, 1929, the date of the levy of the writ, the homestead of appellees, and that appellee Gray had never abandoned the same with the fixed intention of never returning thereto. The court rendered judgment on the verdict perpetually enjoining appellant and said sheriff from "disposing of, attaching or selling said tract of land."

### Opinion.

Appellant presents as ground for reversal three separate propositions, all of which are based upon a single assignment complaining of the refusal of the court to instruct a verdict in its favor. Appellant contends in the first of said propositions that the testimony was insufficient to show that the relation between appellee and his sister was of such character as to constitute their association a family, and appellee the head thereof. Our Supreme Court has held that the family relation is one of status, that there must be legal or moral obligation on the head to support the other member or members, and that there must be a corresponding dependence upon the part of such member or members for such support. Roco v. Green, 50 Tex. 483, 490. Such social status exists between a brother and sister when there is a moral obligation on the part of the brother to support and care for his sister and when the necessity for such care and support exists. In such cases they constitute a family, and the brother as the head thereof is entitled to a homestead

exemption. H. P. Drought & Co. v. Stallworth et al., 45 Tex. Civ. App. 159, 100 S. W. 188, 189 (writ refused). See also, Texas Bank & Trust Co. v. Teich (Tex. Civ. App.) 287 S. W. 666; Barry v. Hale, 2 Tex. Civ. App. 668, 21 S. W. 783, 784; Horton v. Gibson (Tex. Civ. App.) 274 S. W. 292, 294, par. 9; Hutchenrider v. Smith (Tex. Com. App.) 242 S. W. 204, 207, et seq., par. 2. The dependence, however, need not be absolute. Our Supreme Court, in Wolfe v. Buckley, 52 Tex. 641, 649, et seq., held that a widow was the head of a family and entitled to homestead exemption where she had voluntarily assumed the care of the children of a stepdaughter and they were dependent upon her for moral training and for partial support and maintenance. In the case of American National Bank v. Cruger, 31 Tex. Civ. App. 17, 71 S. W. 784, 789, the court held that a single woman who voluntarily assumed responsibility for the rearing, training, and nurturing of certain nephews and nieces, and who contributed to their support and maintenance, was the head of such family, notwithstanding such nephews and nieces were the owners in their own right of substantial property. We quote from the opinion in that case as follows: "The word 'dependence,' as here used, is not restricted to support and maintenance, food and clothing. It is intended to include moral and mental training, and that care and nurture which would be prompted by the feelings of affection which the testimony indicates existed between this aunt and the children of her unfortunate sister."

The Supreme Court refused a writ of error in that case. Appellee's testimony in this case shows that, on the death of the father eleven years before he moved upon the land in controversy, he, being the oldest son, had assumed the care and responsibility of the family, consisting of said sister and younger brothers; that he procured said land with his own means for the use and occupancy of his said family, moved thereon with them, and continued to live thereon for a period of approximately four years. His said unmarried sister, advanced in years, who had remained with such family all the time and ministered to their needs as they grew up, married and moved away, needed something more than food, raiment, and shelter. She needed the comfort and protection of a home and the loving care of her brother, which he, during all the preceding years, had bestowed upon her. He testified that he supported her out of his own means while she lived with him, and that he continued to contribute to her support after they were compelled to separate that he might go to some other place in search of health. We think the testimony above recited was sufficient to raise an issue of family status and to support a finding that appellee was the head of a family during the four years he lived on the land in controversy.

Appellant contends in the second of said propositions that, even if it be conceded that the family relation existed between appellee and his sister while they actually occupied and used the land in controversy as a home, such family was dissolved when they both removed therefrom; that appellee was thereafter no longer the head of a family and no longer entitled to the exemption of such property as his homestead. Appellant suggests in this connection that the rule announced by the Supreme Court in Woods v. Alvarado State Bank, 19 S.W.(2d) 35 et seq., that the homestead right is to be considered an estate in the lands constituting the same, and that the exemption continues in favor of the head of the family after all the other members thereof have dispersed, should be limited to cases in which the head of the family was the father of minor children constituting such family. A careful reading of the opinion of the court in that case excludes such limitation. We quote from such opinion [page 38 of 19 S.W.(2d)] as follows: "A rule that father or mother surviving the death of his or her spouse, raising children who became of age and who left the parental home, can still hold the homestead against all creditors and heirs, but that an old grandmother owning a homestead, with a family composed of orphan grandchildren, who finally became of age and left, could no longer be protected, cannot be explained upon any principle which has been invoked as the basis of our homestead laws."

In a subsequent portion of the opinion [pages 39 and 40 of 19 S.W.(2d)] the court quoted at length, with apparent complete approval, from the case of Wilkinson v. Merrill, 87 Va. 513, 12 S. E. 1015, 11 L. R. A. 632, in which case it was held that, where the family consisted of a grandfather and his grandson, the homestead exemption continued in favor of the grandfather notwithstanding the grandson was drowned.

Appellant contends in the third of said propositions that, even if it be conceded that the homestead right of appellee in said land continued after he went to Tioga to reside, such right was abandoned or terminated upon his marriage, and it thereupon became necessary for him to again occupy said land with the newly created family in order to preserve such right. Appellee had not resided on said land since his marriage. This identical contention was considered and decided against appellant in Gordon-Sewall & Co., Inc., v. Walker (Tex. Civ. App.) 258 S.W. 233, 239, par. 10, from which we quote as follows: "The homestead interest fixed upon G. D. Walker's lands by his occupancy and use while he was living with his mother was not lost by reason of his subsequent marriage. We know of no principle of law that would destroy the homestead character of this land acquired by him

in supporting his mother, because of his subsequent marriage. Appellant contends that this must follow because of the different nature of the homestead interest of a single man and that of a married man. This contention is not sound."

See, also, in this connection, Blackwell v. Vaughn (Tex. Civ. App.) 176 S. W. 912, 913, par. 2; Canning v. Andrews, 38 Tex. Civ. App. 232, 85 S. W. 22.

All of appellant's propositions are overruled, and the judgment of the trial court is affirmed.