Jack WHITE, Appellant,

v.

A. T. EDZARDS et al., Appellees.

No. 7690.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 1, 1966.

Rehearing Denied March 1, 1966.

Leighton Cornett, Paris, for appellant.

T. D. Wells, Jim N. Thompson, Paris, for appellees.

FANNING, Justice.

Appellant sought to enjoin the Sheriff of Lamar County, Texas, and appellee Edzards, a judgment holder against appellant, from selling real estate under execution, contending, among other things, that the property constituted his homestead. The trial court denied appellant's application and appellant has appealed. (However, before filing his appeal bond appellant secured a temporary injunction preventing the sale pending appeal and final disposition of the cause by the appellate courts). The trial court made findings of fact and conclusions of law.

On Nov. 8, 1952, appellant Jack N. White entered into a sales agreement with the Veterans Land Board of Texas whereby the Board as Seller agreed to sell to White and White as Buyer agreed to purchase a 109.9 acre tract of land in Lamar County, Texas. Shortly thereafter, White and wife Julia Rose White, with their minor son, moved on and occupied the premises in question as their homestead, both husband and wife claiming and using same as their homestead. There was only one child born to said marriage, a son, Kenneth Edmond White, who became 18 years of age on October 11, 1964. Jack N. White and wife were divorced by decree of the District Court of Harrison County, Texas, on February 6, 1960, in a suit which had been filed by appellant; by the terms of this divorce decree the major portion of the custody of the minor child was awarded to the mother, with the minor child having occasional visits of a few days with the father, with the father being required to make certain support payments for the mi-

nor until the minor reached 18 years of age. The father contributed some support to the minor, but less than that provided for by the decree. A property settlement agreement between the husband and wife with respect to their community property was approved by the decree, whereby appellant White received the equity in the 109.9 acre farm. Prior to Feb. 8, 1964, appellant Jack N. White married Ella Maxine White and lived with her and her children at an address in Paris, Texas, other than on the 109.9 acre farm premises in question but Jack N. White, who had not acquired any other homestead or any other real property than the 109.9 acre farm, still claimed said 109.9 acre farm as his homestead at that time, and as we view the record, at all times since acquisition up to all times shown in this record appellant has claimed said farm and premises as his homestead. On February 4, 1964, Ella Maxine White secured a divorce from Jack N. White, and he has been a single man since that date. On Dec. 29, 1964, A. T. Edzards secured judgment against appellant Jack N. White on an open account for cattle feed furnished White by Edzards in the amount of $2,179.98. This was for feed for cattle of White in connection with White's operation of the 109.9 acre farm in question. On Feb. 24, 1965, appellee Edzards placed an execution on this judgment in the hands of the Sheriff of Lamar County, Texas, and said sheriff levied on the 109.9 acre farm in question and advertised it for sale. Then followed appellant White's suit for injunction, the trial and then the present appeal. Appellant has made all payments due the Veterans Land Board and is still the owner of the interest in the land conveyed to him by the contract with the Veterans Land Board.

The trial court, after making findings of fact, concluded as a matter of law to the effect that appellant was a single man, not the head of a family, and was not entitled to claim a homestead interest in the land in question, and that White's interest in said land was subject to execution, and that White was not entitled to an injunction.

In uncontradicted testimony, appellant testified to the effect: that during the first marriage, he worked outside Lamar County, Texas; that he kept a room in Marshall, Texas, during the week, but on weekends, stayed at the said farm in Lamar County, Texas, and had livestock running on the place and some other equipment; that in 1961, he came back to Paris and assumed full operation of the farm and livestock; that he maintained that status until about fifteen months prior to June 4, 1965, the date of the hearing; that during the time of his second marriage, he still kept quite a bit of livestock and equipment on the farm; that at the time of the hearing, June 4, 1965, he was traveling for a feed company out of Hereford, Texas, but was maintaining his residence at the farm in Lamar County, Texas; that on the job he was then doing, he only had a room in Hereford, which he visited once a month; that at the time of the hearing he was still maintaining a residence at the farm involved in this lawsuit, where he has a few clothes, some household goods, etc.; that at no time has he had intentions of abandoning this property as his homestead; that such homestead claim has been continuous up until the time of the hearing, and he left his father in charge of the place while he was traveling for the feed company; that the judgment against him secured by appellee Edzards was a result of a feed account bought for cattle located on this place; that his son spent some time with him during every summer; that he contributed to the support of his son (to some extent) until he became eighteen years of age, but that he does not consider his parental responsibility ended just because his son became eighteen years of age on October 11, 1964; that the last time that he actually stayed on the farm property was the night before the hearing, that is, the night of June 3, 1965; and that he had stayed on the place the weekend before that and the weekend before that, and he would be spending time on the farm the following weekend; that his father still lived on the property, looking after his interest in the property; that he had lived on

the property with his child; that appellant never bought any interest in any other real estate since 1952; that when he rented a room in Marshall, Texas, he spent every weekend on the farm helping to take care of the cattle; that at the time that he lived at 1917 Lamar Avenue, Paris, Texas, with his second wife in a rented apartment, he was actively engaged in operating the farm as his sole income; that there was a house on the farm where he took all his meals and spent considerable period of time; that he expects to help support his son past his eighteenth birthday, having already made plans to send him to college for the next year.

■ The trial court did not specifically find in his findings of fact that appellant had abandoned the 109.9 acre farm as his homestead, nor did he conclude in his conclusions of law that appellant had abandoned the 109.9 acre farm as his homestead. Nor did the trial court in his findings of fact find one or more elements of abandonment of the homestead by appellant. Consequently under Rule 299, Texas Rules of Civil Procedure, it can not be presumed in support of the judgment that appellant had abandoned his homestead rights. Furthermore if a finding or conclusion of abandonment had been made it would have had no support in the evidence.

Apparently the theory of the trial court was that upon the divorces the appellant, becoming a single man, was not the head of a family and therefore had no homestead rights in the property. Had the appellant not had the minor son the trial court's judgment would have been correct under such authorities as the following: Bahn v. Starcke, 89 Tex. 203, 34 S.W. 103 (1896); Tanton v. State National Bank of El Paso, 125 Tex. 16, 79 S.W.2d 833, 93 A.L.R. 1093 (1935); Clack v. Williams, Tex.Civ.App., 189 S.W.2d 503, er. dism., w. o. m. (1945); Steitz v. Steitz, Tex.Civ.App., 262 S.W.2d 262, wr. dism. (1953); Reisberg v. Hubbard, Tex.Civ.App., 326 S.W.2d 605, no writ (1959).

■ The case at bar is clearly distinguishable from the last above referred to authorities for the reason that a homestead was established by the husband and wife and there was a minor child at the time of the first divorce decree and the homestead has not since been abandond. Under such circumstances and under the record in this case it must be held that appellant Jack N. White, the father of the minor son, had a homestead right in the 109.9 acre tract in question, which had not been abandoned, and that the same was exempt from execution on the Edzards judgment in question, and that appellant was entitled to an injunction to prevent sale of said homestead property under said execution. In this connection see the following authorities: Tex.Const. Art. 16, Sec. 50, Vernon's Ann. St.; Speer & Goodnight v. Sykes, 102 Tex. 451, 119 S.W. 86 (1909); Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35 (1929); Posey v. Commercial Nat. Bank et al., Tex.Comm.App., 55 S.W.2d 515 (1932); Shook v. Shook, Tex.Civ.App., 145 S.W. 682, writ refused (1912); Jeter v. Jeter, Tex.Civ.App., 281 S.W. 598, no writ (1926); Reconstruction Finance Corporation v. Burgess, Tex.Civ.App., 155 S.W.2d 977, writ refused (1941); Sakowitz Bros. et al. v. McCord, Tex.Civ.App., 162 S.W.2d 437, no writ (1942). In Jeter v. Jeter, supra (281 S.W. 598) it was stated in part as follows:

"The attempt to subject to the payment of court costs and the attorney's fee the interest of plaintiff in error in his homestead was altogether unauthorized. *The homestead character of the land was not destroyed by the decree of divorce. Mr. Jeter, notwithstanding the custody of the children had been awarded to their mother, remained the head of a family; his parental interest in the welfare of his children subsisted; and both a legal and moral obligation rested upon him for their proper care and support.* (Emphasis added).

As his homestead interest in the land was not subject to the payment of these debts, the court erred in entering a decree to that effect. (Const. art. 16, § 50; Speer [& Goodnight] v. Sykes, 119 S.W. 86, 102 Tex. 451, 132 Am.St. Rep. 896; Shook v. Shook (Tex.Civ. App.) 145 S.W. 682, 684, 685."

The judgment of the trial court is reversed and judgment is rendered ordering the issuance of the injunction prayed for by appellant.

Reversed and rendered.