NCNB TEXAS NATIONAL BANK and Greg Stephenson, Substitute Trustee, Appellants,

v.

Brooks CARPENTER and Wife, Pearl Carpenter, Appellees.

No. 2–92–143–CV.

Court of Appeals of Texas, Fort Worth.

March 10, 1993.

⊜⟶57(1)

Nichols, Jackson, Kirk & Dillard, and Tim Kirk, John Pierce Griffin, Christina A. Melton, Dallas, for appellants.

Meier & Parker, L.C. and William C. Meier, Bedford, for appellees.

Before LATTIMORE and DAY, JJ. and CLYDE R. ASHWORTH, J. (Retired) Sitting by assignment.

## OPINION

DAY, Justice.

NCNB Texas National Bank and Greg Stephenson, Substitute Trustee (NCNB), appeal from the trial court's order granting summary judgment, declaratory judgment, and attorney's fees in favor of Brooks and Pearl Carpenter (the Carpenters).

We reverse and remand for trial on the merits.

The undisputed facts in this case are as follows: By warranty deed dated January 31, 1976, the Carpenters acquired a 187.93–acre tract of land in Erath County, Texas. The Carpenters assumed and agreed to pay to Stephenville Bank & Trust Company a promissory note in the original amount of $50,000, dated October 2, 1972 (the $50,000 first lien note). From 1976 until the present, the land has been used for agricultural purposes, including grazing cattle and livestock and raising hay. A barn, but no residence, is located on the property. The

Carpenters' residence is located on a separate 27–acre tract of land in Erath County near the City of Stephenville, Texas.

On December 1, 1983, Interfirst Bank Stephenville, N.A. (Interfirst), NCNB's predecessor-in-interest, made a loan consolidating all the previously existing loans that Randall Carpenter[1] had with Interfirst (the 1983 loan). As consideration for the loan, Brooks and Pearl Carpenter gave a deed of trust for the 187.93 acres to Karen Domel, Trustee, for the benefit of Interfirst (the 1983 deed of trust).[2] Brooks Carpenter orally represented to Interfirst's loan officer, Monty Bedwell, that the 187.93–acre tract was not the Carpenters' homestead. The 1983 deed of trust also makes the following representation:

> Grantors [Brooks and Pearl Carpenter] expressly represent the property hereinabove mentioned and conveyed to the Trustee forms no part of any property owned, used, or claimed by the Grantors as exempted from forced sale under the laws of the State of Texas, and Grantors renounce all and every claim thereto under any such law or laws.

The Carpenters and Interfirst agreed at the time the 1983 loan was made that it was inferior to the $50,000 first lien note.

At the closing of the 1983 loan, Brooks and Pearl Carpenter, Randall Carpenter, and Randall's wife, Isla, executed a written commercial loan purpose statement that contained an exempt property disclaimer virtually identical to the one in the 1983 deed of trust.

In 1986 the 1983 loan was renewed and extended (the 1986 loan). By deed of trust dated February 27, 1986, Brooks and Pearl Carpenter again represented that the 187.-93–acre tract was not their homestead. The 1986 deed of trust contained the following representation:

> 28. Designation of Homestead. Grantors [Brooks and Pearl Carpenter] expressly represent that the property hereinabove mentioned and conveyed to the Trustee forms no part of any property owned, used or claimed by Grantors as exempted from forced sale under the laws of the State of Texas, and Grantors renounce all and every claim thereto under any such law or laws and *hereby expressly designate as their homestead* and as constituting all the property owned, used or claimed by them as exempt under such laws *other property owned by them.* [Emphasis supplied.]

Before making the 1983 loan, and at least semi-annually thereafter, Bedwell visited the 187.93–acre tract and observed that it was used to graze cattle and for a haying operation in conjunction with a dairy business. Bedwell was also aware that the Carpenters owned more than 400 rural acres in Erath County, in addition to the 187.93 acres in question.

Sometime after 1986, the Carpenters defaulted on the 1986 loan. Accordingly, by letter dated March 30, 1990, NCNB demanded that the Carpenters pay the 1986 note in full within ten days. In response, the Carpenters, through their attorney, notified NCNB that they claimed the 187.93–acre tract as part of their homestead. NCNB then advised the Carpenters, by letter dated May 14, 1990, and an accompanying notice of substitute trustee's sale, that NCNB intended to foreclose its lien on the 187.93–acre tract on June 5, 1990.

On April 23, 1990, Brooks Carpenter filed an application for a 1–d–1 agricultural appraisal of the 187.93 acres. On or about May 16, 1990, Brooks Carpenter obtained a survey deleting 15 acres from the 187.93–acre tract. The Carpenters assert that the remaining 172.93 acres, along with the 27–acre tract upon which they reside, constitute their rural homestead.

On May 30, 1990, the Carpenters petitioned in Erath County District Court for a temporary restraining order and a temporary injunction prohibiting NCNB from foreclosing on the lien against the 172.93 acres. The trial court granted the Carpenters' requests. The suit was subsequently

---

1. Randall Carpenter is the Carpenters' son.

2. The 1983 deed of trust names Farmers–First National Bank as beneficiary. Farmers–First National Bank was predecessor-in-interest to Interfirst.

transferred to Tarrant County by court order entered upon the parties' joint motion for change of venue.

The Carpenters then filed a motion for summary judgment in Tarrant County. By their motion, the Carpenters sought a declaration (1) that NCNB's lien against the 172.93 acres is void, thus prohibiting foreclosure, (2) that the 172.93–acre tract and the 27 acres upon which the Carpenters reside is their rural homestead, and (3) attorney's fees. The trial court granted the Carpenters' motion, and NCNB appeals from that order.

NCNB raises the following grounds on appeal: (1) summary judgment is improper in this case because distinct factual disputes exist as to whether the Carpenters: (a) used and occupied the 172.93 acres as their homestead, (b) established their homestead claim as a matter of law, (c) are estopped from claiming the property as their homestead, and (d) had abandoned their homestead claim to the property; (2) the trial court improperly held that NCNB must establish estoppel as a matter of law; and (3) the declaratory judgment and award of attorney's fees are also improper since the Carpenters failed to establish their homestead claim as a matter of law.

Relying on TEX.R.CIV.P. 94, the Carpenters assert the trial court properly granted summary judgment in this case because NCNB failed to properly plead and prove estoppel, and because NCNB failed to plead abandonment. The Carpenters contend the affirmative defense alleged in NCNB's original answer lacks the detrimental reliance element and is therefore insufficient to constitute a plea of estoppel. The Carpenters also claim NCNB waived the abandonment issue by not raising it in NCNB's original answer. Rule 94, which requires certain defenses to be affirmatively pled, is not applicable in summary judgment proceedings. *Holleman v. Halliburton Co.*, 450 S.W.2d 883, 886 (Tex.Civ. App.—Fort Worth 1970, no writ); *see also Texana Oil Co. v. Stephenson*, 521 S.W.2d 104, 107 (Tex.Civ.App.—El Paso 1975, no writ). When the affidavits or other summary judgment evidence disclose facts that render the position of the moving party untenable, summary judgment should be denied regardless of defects that may exist in the pleadings of the opposite party. *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233, 237 (1956); *see also* TEX. R.CIV.P. 166a(c).

Because Rule 94 is inapplicable in summary judgment cases, whether NCNB properly raised estoppel and abandonment *in its pleadings*, is irrelevant to this appeal. NCNB raised both estoppel and abandonment in its response to the Carpenters' motion for summary judgment, and the Carpenters do not challenge the legal sufficiency of those allegations. Consequently, if the Carpenters established their homestead claim as a matter of law, we must review the summary judgment evidence to determine whether it shows that there existed a genuine issue of material fact with regard to estoppel or abandonment.

In its first point of error, NCNB complains the trial court improperly declared the 172.93 acres part of the Carpenters' homestead. In its second point of error, NCNB challenges the propriety of summary judgment in favor of the Carpenters, contending that fact issues exist concerning whether the Carpenters: (1) used and occupied the property in question as their homestead; (2) are estopped to claim the property is their rural homestead; and (3) abandoned their homestead claim to the property. We agree with NCNB that there are factual disputes concerning at least the Carpenters' homestead claim and NCNB's estoppel claim.

In their motion for summary judgment, the Carpenters asserted that they have been in actual possession of the property from the time they acquired it in 1976 to the present and have continually used it "for agricultural purposes, including the grazing of cattle and livestock and the raising of agricultural products such as hay" to support their family. The Carpenters also asserted that Bedwell knew the Carpenters were using the property for these purposes, as well as for a dairy land operation, prior to the time the Carpenters executed the 1986 note and deed of trust. The Carpenters made similar assertions regard-

ing their possession and use of the property, and Bedwell's knowledge of it, in their affidavits in support of their motion for summary judgment.

In its response to the Carpenters' motion for summary judgment, NCNB contended that the property in dispute was not occupied or used as a home by the Carpenters. In his affidavit in support of NCNB's response, Bedwell stated that, based on his personal visits to and observation of the property, the land was being used for a hay field operation in conjunction with a dairy business. Bedwell also stated, however, that at the time of the 1983 and 1986 loans, he had personal knowledge of the fact that Randall and Jerry Carpenter, the Carpenters' sons, were working the hay operation and grazing cattle on the property in conjunction with *their* (*i.e.*, Randall and Jerry's) dairy operation. Finally, Bedwell stated that he also had personal knowledge that Brooks Carpenter's business was a trucking operation operated from another location in Erath County.

The Texas Constitution makes the following provisions regarding homesteads:

> The homestead *of a family* ... shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon....

TEX.CONST. art. XVI, § 50 (emphasis supplied).

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon ... provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or *the head of a family*....

TEX.CONST. art. XVI, § 51 (emphasis supplied). *See also* TEX.PROP.CODE ANN. § 41.-002(b)(1) (Vernon Supp.1993).

█ The party claiming the homestead exemption—in this case, the Carpenters—has the burden of establishing the homestead character of the property. *First Interstate Bank v. Bland,* 810 S.W.2d 277, 286 (Tex.App.—Fort Worth 1991, no writ). To establish a homestead claim in rural property, the claimant must: (1) reside on part of the property; and (2) use the property for purposes of a home. *Fajkus v. First Nat'l Bank,* 735 S.W.2d 882, 884 (Tex.App.—Austin 1987, writ denied); TEX. CONST. art. XVI, § 51. Although actual residence on part of the rural property is required, one need not reside on all the parcels so long as the other tracts are used for the support of the family. *Fajkus,* 735 S.W.2d at 884.

In the instant case, the parties agree that the Carpenters reside on part of the property they are claiming as their rural homestead. The dispute between NCNB and the Carpenters centers solely around whether the Carpenters used the 172.93 acres as a home. The Carpenters claim they have continually used this tract of land for agricultural purposes and to support their family, and that NCNB had knowledge of this use through Bedwell, NCNB's senior loan officer. Conversely, NCNB asserts the Carpenters' sons, and not the Carpenters, were in actual use of the property when the loans were made.

█ In order for either a family business or residence homestead to exist, a family must exist. The requirement of family is met whenever there is a group of people who have a social status as a family—that is, a group living together subject to one domestic government. *There must be a legal or moral responsibility on the head of the family for the rest of the members of the family, and a corresponding dependence of the others upon the head of the family.* *Henry S. Miller Co. v. Shoaf,* 434 S.W.2d 243, 244 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.). *See also Roco v. Green,* 50 Tex. 483, 490 (1878); *Central Life Assur. Soc. v. Gray,* 32 S.W.2d 259, 260 (Tex.Civ.App.—Waco 1930, writ ref'd). A moral obligation for support and care exists where there is a necessity for such

care and support, although that necessity need not be absolute. *Shoaf*, 434 S.W.2d at 245.

In addition to the situation involving a husband, wife, and minor children, Texas courts have found that a family exists for homestead exemption purposes in the following circumstances: (1) a divorcee and her mother constitute a family if the divorcee has a moral obligation to support and care for her mother, *Shoaf*, 434 S.W.2d at 243, 246; (2) brother and sister constitute a family when the brother has a moral obligation to support and care for his sister, *Gray*, 32 S.W.2d at 260–61; (3) a father and minor son constitute a family—whether or not the father has custody of the child—because the father has a legal and moral obligation to support the child, *White v. Edzards*, 399 S.W.2d 935, 937 (Tex.Civ. App.—Texarkana 1966, writ ref'd n.r.e.). In each of these instances, the court allowed the head of the family to claim a homestead exemption under article 16, section 50 of the Texas Constitution.

In contrast, the court in *L. E. Witham & Co. v. Briggs' Estate*, 58 S.W.2d 49 (Tex. Comm'n App.1933, holding approved), held that a mother and adult son, who lived together and shared expenses, did not constitute a "family" within the meaning of article 16, section 50. *Id.* at 49–50. The court stated it would be:

> unreasonable to hold that a mother is under any legal or moral obligation to support her adult son, who is able-bodied and capable of supporting himself. Nor can it reasonably be said that the mother, who is capable of supporting herself and does support herself, is dependent on her son for support.

*Id.* Consequently, the court held that the mother could not claim a homestead exemption to avoid foreclosure of a paving lien on the property in question. *Id.* at 50.

■ By their summary judgment evidence, the Carpenters failed to conclusively establish two facts essential to their family homestead claim: (1) that they, personally, used the 172.93 acres as a home (2) to support their family. The Carpenters claimed they personally possessed and used the property for agricultural purposes from 1976 to the present. Bedwell's affi-

davit controverts this claim, however. Bedwell stated the land was actually used by the Carpenters' sons, Randall and Jerry, at the time the 1983 and 1986 loans were made.

■ The Carpenters also claimed they used the property to support their family. The Carpenters put on no evidence, however, that they, together with Randall and Jerry, constitute a single "family" as that term is defined in the case law for homestead exemption purposes. The record does not contain Randall's and Jerry's ages, but it does show that Randall was married at the time the 1983 loan was made. Absent a showing by the Carpenters that they were under a legal or moral obligation to support and care for Randall and/or Jerry and that a necessity for such support and care existed at the time the 1983 and 1986 loans were made, the Carpenters cannot claim the 172.93 acres as their homestead if, in fact, Randall and Jerry occupied and used the property instead of their parents.

The disagreement over who was in actual possession and use of the 172.93 acres also bears directly on NCNB's estoppel claim.

■ No estoppel can arise in favor of a lender or encumbrancer who has attempted to secure a lien on homestead property that is in actual use and possession of the homestead claimant, based solely upon declarations, whether written or oral, which state to the contrary. *Lincoln v. Bennett*, 138 Tex. 56, 156 S.W.2d 504, 506 (1941); *First Interstate Bank*, 810 S.W.2d at 287. Moreover, when a homestead claimant is in actual occupancy of his homestead, it will be deemed that a lender or encumbrancer acted with knowledge of the occupant's right to invoke the rule of homestead. *First Interstate Bank*, 810 S.W.2d at 285; *see also Englander Co. v. Kennedy*, 424 S.W.2d 305, 308–09 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 428 S.W.2d 806 (Tex.1968). Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact. *First Interstate*, 810 S.W.2d at 286; *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

NCNB relied upon the defense of estoppel at the summary judgment hearing. NCNB contended that estoppel was founded on the Carpenters' declarations in the 1983 and 1986 deeds of trust and the commercial loan purpose statement. The 1983 deed of trust and the commercial purpose statement contain clauses disclaiming any homestead interest in the 172.93 acres. The 1986 deed of trust contains a designation of homestead paragraph in which the Carpenters, as grantors, state that they *expressly designate as their homestead other property owned by them.* No homestead property is specifically described, however.

Additionally, NCNB contended that the use of the property in question was not inconsistent with Brooks Carpenter's oral representations and the representations made in the deeds of trust that the 172.93 acres did not constitute the Carpenters' homestead.

In his affidavit, Bedwell stated twice that he made the 1983 and 1986 loans "solely in reliance upon both the oral and written representations of Brooks Carpenter" and other members of the Carpenter family that the property in question was not their homestead. Nonetheless, Bedwell also alleged other facts in his affidavit to show that the use of the property was not inconsistent with Brooks Carpenter's representations that the property was not his homestead, such as actual use by Randall and Jerry Carpenter in conjunction with their dairy business. Bedwell also stated that he knew personally that the Carpenters owned over 400 acres in rural Erath County, in addition to the 172.93 acres, that they could have claimed as their homestead.

A homestead claimant may be estopped to claim the homestead exemption where physical facts open to observation lead to a conclusion that the property in question is not the homestead, the use of the property is not inconsistent with the claimant's representations that the property is disclaimed as the homestead, and the representations were intended to be and were actually relied upon by the lender. *First Interstate Bank,* 810 S.W.2d at 285–86.

If Randall and Jerry Carpenter, rather than Brooks and Pearl Carpenter, were occupying and using the 172.93 acres when the 1983 and 1986 loans were made, this fact could have caused Bedwell to conclude, based on the Carpenters' oral and written representations, that the property in question was not Brooks and Pearl Carpenter's homestead. The Carpenters do not dispute that they intended for NCNB to rely on their representations that the property was not their homestead. Moreover, Bedwell contends that he did, indeed, rely upon those representations, as borne out by his personal observations, when making the loans.

Accordingly, because material fact issues exist regarding who actually possessed and used the 172.93 acres and whether Randall and Jerry Carpenter were part of Brooks and Pearl Carpenter's "family," we find that the trial court improperly: (1) declared the property in question part of Brooks and Pearl Carpenter's rural homestead; (2) declared NCNB's lien on 172.93 of the 187.93 acres void *ab initio;* and (3) granted summary judgment for the Carpenters. We sustain NCNB's first and second points of error. In light of our holding regarding these points of error, we deem it unnecessary to consider NCNB's points of error three through five.

In its sixth point of error, NCNB complains the trial court improperly granted the Carpenters' request for attorney's fees. In their motion for summary judgment, the Carpenters asserted their entitlement to attorney's fees under TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986) or, alternatively, TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986).

Section 37.009 governs the award of attorney's fees in a declaratory judgment action and provides that the court may award attorney's fees in such cases "as are equitable and just." Since we are remanding all claims made in the Carpenters' motion for summary judgment, including their declaratory judgment action, for trial on the merits, we find it unnecessary to consider whether the Carpenters were entitled to attorney's fees under section 37.009. *See French v. Diamond Hill–Jarvis Civic League,* 724 S.W.2d 921, 924 (Tex.App.—

Fort Worth 1987, writ ref'd n.r.e.). One purpose of the remand is to afford the trial court the opportunity to exercise its discretion in case of a changed result after trial on the merits, and we do not express any opinion as to whether the trial court should or should not award the Carpenters attorney's fees on their declaratory judgment claim.

Finally, in light of our ruling in this case, the Carpenters are not entitled to attorney's fees under section 38.001 because they did not prevail on any of the claims asserted in their motion for summary judgment. *See Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 551 (Tex.App.—Dallas 1991, no writ) (party seeking attorney's fees must prevail on a cause of action for which attorney's fees are recoverable). Moreover, "there must be a recovery of money, or at least something of value; otherwise, the attorney's fee award cannot be described as an 'addition' to the claimant's relief." *Id.* (quoting *ITT Commercial Finance Corp. v. Riehn*, 796 S.W.2d 248, 256 (Tex.App.—Dallas 1990, no writ)). Thus, without considering the applicability of section 38.001 to this case, we find that the Carpenters are not, at this point, entitled to attorney's fees thereunder.

We reverse the trial court's judgment and remand this case for trial on the merits.