Opinion issued November 6, 2008


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00056-CV






RONNIE H. STOKER, Appellant


V.


DIANE FISCHER STOKER, Appellee






On Appeal from the 310th District Court

Harris County, Texas

Trial Court Cause No. 2003-19746






MEMORANDUM OPINION


 Appellant, Ronnie H. Stoker, appeals from a judgment awarding property to his
wife, Diane Fischer-Stoker, appellee. In five issues on appeal, Ronnie argues that
(1) the division of property is contrary to the express provisions in the parties' marital
agreement; (2) the trial court mischaracterized property in contravention of the
parties' marital agreement; (3) the trial court mischaracterized a portion of Ronnie's
separate estate; (4) the trial court erred in failing to award Ronnie his claim for
economic contribution; and (5) the trial court erred in awarding Diane a judicial lien
with a right of foreclosure against Ronnie's separate property homestead.

 We affirm.

Background


 The parties were married on July 20, 1991 and filed for divorce in April 2003. 
The first trial ended in a division of the estate in which Diane appealed to this Court,
contending that the trial court awarded a portion of her separate property to Ronnie. 
We agreed that the trial court awarded Diane's separate property to Ronnie, and we
remanded the community estate to the trial court to conduct a just and right division
based upon the correct characterization of the property. (1)

 Pursuant to our remand instructions, the trial court conducted a new trial on
September 27, 2006 and rendered a "Final Decree of Divorce After Remand From
The Court of Appeals." Ronnie appeals from this decree of divorce. 


Analysis


Marital Agreement

 In his first issue, Ronnie argues that the division of property was contrary to
the express provisions in the parties' marital agreement. 

 In a decree of divorce, the court shall order a division of the community estate
in a manner that the court deems just and right, having due regard for the rights of
each party. Tex. Fam. Code Ann. § 7.001 (Vernon 2006); Rafferty v. Finstad, 903
S.W.2d 374, 376 (Tex. App.--Houston [1st Dist.] 1995, writ denied). In effecting a
just and right division of the community estate, section 7.001 of the Family Code
vests the trial court with broad discretion that will not be reversed on appeal unless
the complaining party shows that the trial court clearly abused its discretion. Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Rafferty, 903 S.W.2d at 377. The test of
whether the trial court abused its discretion is whether the court acted arbitrarily or
unreasonably, and without reference to any guiding principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Rafferty, 903
S.W.2d at 376.

 Ronnie did not request findings of fact. We must, therefore, presume that the
trial court made all the necessary findings to support its judgment. Pharo v.
Chambers County, Tex., 922 S.W.2d 945, 948 (Tex. 1996). If the trial court's implied
findings are supported by the evidence, we must uphold the judgment on any theory
of law applicable to the case. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
In determining whether some evidence supports the judgment and implied findings
of fact, we consider only that evidence most favorable to the issue and disregard
entirely any contrary evidence. Id.

 We conclude that Ronnie has waived this issue by not arguing "with
appropriate citations to authorities and to the record." See Tex. R. App. P. 38.1(h). 
Ronnie merely states, "The trial court in rendering its judgment clearly did not divide
the parties' community estate 50/50 as agreed to by the parties, as there was no
division of bank accounts, or items. These were categorically awarded to Diane. As
such, this award should be set aside." Ronnie continues,

 The trial court further abused its discretion in awarding essentially
the entire community property estate to DIANE. At trial, the trial court
admitted every trial exhibit proffered. These exhibits detail the values
of bank accounts, jewelry, and other tangible assets which were awarded
outright, with few exceptions to DIANE. The court's rendition of its
decision concerning the property division in this case is almost a
complete 180 degree turn from any of its prior decisions concerning the
property division. There was no testimony presented that should cause
such a great variance in the awards by the court during the first trial and
the second trial. As such, the award to DIANE should be set aside.


 For this issue, Ronnie's brief contains no citation to authority, no explanation
for how the trial court's division is not in accordance with the parties' marital
agreement, and no citations to the record to show that the trial court abused its
discretion. Accordingly, we conclude that Ronnie has waived this issue. See Tex.
R. App. P. 38.1(h).

 Even to the extent that the issue has not been waived, we conclude that Ronnie
has not shown that the trial court clearly abused its discretion.

 Paragraph nine of the parties' marital agreement provides,

 In the undesired event that our marriage is dissolved by divorce,
each party shall receive the following:


 (a) all separate property belonging to that party; and

 (b) one-half (½) of all community assets. 

Ronnie argues that "there was no division of bank accounts, or items." Ronnie also
argues that the trial court abused its discretion in "awarding essentially the entire
community property estate to Diane." (2) 

 We disagree with Ronnie's contention that bank accounts were not divided or
that essentially all of the community property estate was awarded to Diane. The
decree of divorce shows that the trial court awarded to Ronnie:

 H-1 All household furniture, furnishings, fixtures, goods, art objects,
collectibles, appliances, electronics, and equipment in the
possession of the husband subject to his sole control.


 H-2 All clothing, jewelry, and other personal effects in the possession
of the husband or subject to his control.


 H-3 All policies of life insurance insuring the husband's life.


 H-4 The 1997/1998 Ford F-150 motor vehicle, together with all
prepaid insurance, keys, and title documents


 H-5 50% of the Internal Revenue Service tax refund check in the
amount of $14,374.0.


 H-6 In connection with Klein Bank **** and Compass Bank ****,
50% of the sums on deposit in these accounts, as of December 12,
2003, is awarded to Diane Fischer-Stoker and 50% to Ronnie H.
Stoker.


 H-7 100% of the proceeds from the sale of the 1981 Gibson
Houseboat in the amount of $14,338.48. 


 The trial court also awarded to Diane H-1 through H-3 of those items that were
in her possession. The trial court also awarded Diane:

W-4 The 2003 Chevrolet Suburban motor vehicle, and the 1996 Ford
Explorer motor vehicle, together with all prepaid insurance, keys,
and title documents.


W-5 All right, title and interest in the 4 Rodeo Season Tickets;


W-6 100% of the MAC Steel Service Center USA 401(k) Account in
the name of Diane Stoker, as of December 12, 2003, and all
dividends, income, increases, and decreases on said 100%
thereafter; 


W-7 100% of the TAD Metals 401(k) Plan Fidelity Investments, in the
name of Diane Stoker ****, as of December 12, 2003, and all
dividends, income, increases, and decreases on said 100%
thereafter; 


W-8 $524 of the funds in the Wells Fargo Bank Account **** in the
name of Diane Fischer-Stoker, as of December 12, 2003, and
dividends, income, increases and decreases on said 100%
thereafter;


W-9 $327 of the funds in the Wells Fargo Bank Account **** in the
name of Diane Fischer-Stoker, as of December 12, 2003, and
dividends, income, increases and decreases on said 100%
thereafter.


The trial court also awarded Diane 50% of the Internal Revenue refund check and
50% of the funds in the Klein and Compass Bank accounts just as Ronnie received
50% of these accounts. 

 The parties presented exhibits regarding the values of the marital property. (3) 
The trial court's decree of divorce appears to divide the assets in a 50-50 split, but in
instances where it did not, other divisions seem to create an equal split. Based on the
record, the trial court could have impliedly found that one-half of the community
assets were awarded to Ronnie. Therefore, Ronnie has not demonstrated that the
division was a clear abuse of discretion.

 We overrule Ronnie's first issue on appeal.

Ronnie's Ring and Guns

 In his second issue on appeal, Ronnie argues that the trial court erred by
awarding his separate property to Diane. Specifically, Ronnie contends that the trial
court erroneously awarded to Diane as community property a 1.7-karat ring and guns
that were listed as his separate property in the parties' marital agreement. In his third
issue on appeal, Ronnie argues that the trial court's substantial mischaracterization
of separate property as community property requires this Court to remand.

 The Texas Family Code provides that spouses may agree to partition or
exchange any part of their community property as they desire. Tex. Fam. Code Ann.
§ 4.102 (Vernon 2006); Winger v. Pianka, 831 S.W.2d 853, 859 (Tex. App.--Austin
1992, writ denied). To exchange such property, the parties must do so by written
agreement. Tex. Fam. Code Ann. § 4.104 (Vernon 2006); Winger, 831 S.W.2d at
859. A premarital agreement should be interpreted in accordance with the true
intentions of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983); Pearce v. Pearce, 824 S.W.2d 195, 200 (Tex. App.--El Paso
1992, writ denied). If the agreement is so worded that it can be given a certain legal
meaning, it is not ambiguous and the courts will construe it as a matter of law. Coker,
650 S.W.2d at 393.

 Parties to a contract intend that each clause should have an effect. See
Heritage Res. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). Contract terms
should be given their plain, ordinary, and generally accepted meaning unless the
agreement shows that they are intended in a different or technical sense. See id.;
Western Reserve Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557
(1953). Courts construe marital property agreements narrowly in favor of the
community estate. See, e.g., Byrnes v. Byrnes, 19 S.W.3d 556, 558 (Tex. App.--Fort
Worth 2000, no pet.). A trial court lacks authority to divest a party of separate
property in a divorce decree. See Cameron v. Cameron, 641 S.W.2d 210, 220 (Tex.
1982). 

 The parties' marital agreement listed the following items as Ronnie's separate
property: 

 11. 14 karat gold mounting with 1.07 karat emerald cut center
diamond and 2 karat baguettes, appraised value $10,000. 


 12. Miscellaneous rifles, shotguns, and pistols in the husband's
possession.


In its divorce decree, the trial court set aside separate property belonging to Ronnie,
which included, "[a]ll jewelry in his possession" and "[a]ll rifles, shotguns, and
pistols in the husband's possession." The trial court also set aside separate property
belonging to Diane, which included "[a]ll jewelry in the possession of Diane Fischer-Stoker." Ronnie requested neither findings of fact nor conclusions of law regarding
these items. Nor did Ronnie present any evidence that the ring was not in his
possession. He also presented no evidence that any of the guns were not in his
possession. 

 The decree of divorce does not give any guns to Diane. Rather, the trial court
properly awarded the guns to Ronnie as specified in the parties' marital agreement. 
As for the jewelry, the trial court could have found that the jewelry was in Ronnie's
possession. Therefore, we conclude that Ronnie has not shown that the trial court
mischaracterized his separate property as Diane's community property. (4) 

 We overrule Ronnie's second and third issues on appeal.

Economic Contribution

 In his fourth issue, Ronnie argues that the trial court erred in failing to grant
Ronnie an offset for economic contribution from the award of Diane's home. Ronnie
notes that the trial court's final judgment makes no mention of Ronnie's claim for
economic contribution and therefore the judgment is unfair.

 Diane responds that section eight of their premarital agreement waives any
claims for economic reimbursement and that section 3.410 of the Texas Family Code
extends "the effect of such a waiver to claims for economic contribution. . . ." We
agree.

 Paragraph eight of the marital property agreement provides,

 Any payment or contribution by one of us to satisfy the debts or
otherwise benefit the separate estate of the other shall not give rise to a
claim for reimbursement or an interest in any property purchased by
those payments unless we otherwise agree in writing. Any right of
reimbursement that may arise during our marriage for payments or
contributions made to the other's separate estate to the extent any
payment is made by one for the benefit of the other shall be presumed
to be a gift to the other party's separate estate. 


 Section 3.410 provides,

 A premarital or marital property agreement, whether executed
before, on, or after September 1, 1999, that satisfies the requirements of
Chapter 4 is effective to waive, release, assign, or partition a claim for
economic contribution under this subchapter to the same extent the
agreement would have been effective to waive, release, assign, or
partition a claim for reimbursement under the law as it existed
immediately before September 1, 1999, unless the agreement provides
otherwise.


Tex. Fam. Code Ann. § 3.410 (Vernon 2006).

 Section eight of the parties' marital property agreement provides that any
payment to benefit the separate estate of the other will not result in a claim for
reimbursement. Section 3.410 extends the parties' marital agreement to waive
economic contribution claims. Therefore, Ronnie had no claim for economic
contribution. We conclude that the trial court did not err in failing to award Ronnie
economic contribution.

 Moreover, Ronnie neither cites any authority to support his argument nor
explains how he is entitled to economic contribution. See Tex. R. App. P. 38.1(h).

 We overrule Ronnie's fourth issue on appeal.

Judgment Lien

 In his fifth issue on appeal, Ronnie argues that the trial court erred in granting
a judgment lien on his new home with a right of foreclosure in favor of Diane and
against Ronnie. Ronnie argues that the lien violates article XVI, section 50 of the
Texas Constitution.

 Section 50 of article XVI of the Texas Constitution protects a person's
homestead from forced sale for the payment of most debts except those enumerated
in subsection (a). (5) Stringer v. Cendant Mortg. Corp., 23 S.W.3d 353, 354 (Tex.
2000). Ronnie argues that none of the subsection (a) exceptions applies and therefore
the lien against his new home is void. Diane responds that Ronnie did not present
evidence that the property was Ronnie's homestead. We agree with Diane's
argument.

 To establish homestead rights, the claimant must show a combination of both
overt acts of homestead usage and the intention on the part of the owner to claim the
land as a homestead. Sanchez v. Telles, 960 S.W.2d 762, 770 (Tex. App.--El Paso
1997, writ denied) (citations omitted). The party claiming the homestead exemption
has the burden of establishing the homestead character of the property. Id.; NCNB
Texas Nat'l Bank v. Carpenter, 849 S.W.2d 875, 879 (Tex. App.--Fort Worth 1993,
no writ). 

 At trial, Ronnie did not present evidence that the property on which the trial
court attached a lien was his homestead. (6) At best, Ronnie described the property as
his home. Because Ronnie presented no evidence to show that the property was his
homestead, the trial court did not abuse its discretion in granting an equitable lien on
Ronnie's property. See Parker v. Dodge, 98 S.W.3d 297, 302 n.2 (Tex.
App.--Houston [1st Dist.] 2003, no pet.) (stating that appellant presented no proof
that lien existed on homestead and issue waived because it was not argued to trial
court).

 We overrule Ronnie's fifth issue on appeal.

Conclusion


 We affirm the judgment of the trial court.



 

 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.
1. See generally Fischer-Stoker v. Stoker, 174 S.W.3d 272 (Tex. App.--Houston [1st
Dist.] 2005, pet. denied).
2. Ronnie does not specify which bank accounts or items were not evenly distributed in
accordance with the parties' marital agreement. Nor does Ronnie specify how the
community estate was "essentially" awarded to Diane.
3. In his appellate brief, Ronnie contends that the parties stipulated to the values of the
property awarded. Diane counters that the parties did not stipulate. The appellate
record does not support Ronnie's contention that the parties stipulated to values of
assets. The exhibits in the record show that the parties placed different values on the
assets. 
4. Because the trial court did not mischaracterize Ronnie's separate property, we need
not consider Ronnie's claim that the trial court ignored the inception of title doctrine. 
See Tex. R. App. P. 47.7.
5. The Texas Constitution specifically protects homesteads from forced sale except to
satisfy liens securing purchase money, tax, or home improvement debts. See Tex.
Const. art. XVI, § 50; see also Tex. Prop. Code Ann. § 41.002 (Vernon 2000).
6. Diane requested an equitable lien on Ronnie's property during closing argument. 
Ronnie did not assert to the trial court that his property was a homestead.