STATE of Texas, Acting By and Through the TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, Appellant,

v.

Charles W. ELLISON, Guardian of the Estate of James L. Ellison, Appellee.

No. 03–95–00097–CV.

Court of Appeals of Texas, Austin.

Jan. 17, 1996.

Pamela C. Oglesby, Mary Ann Slavin, Chief Attorneys, Reimbursement Department, TDMHMR, Austin, for appellant.

Aaron L. Jackson, Jackson & Hemer, L.L.P., Austin, for appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

CARROLL, Chief Justice.

Appellant State of Texas acting by and through the Texas Department of Mental Health and Mental Retardation ("TDMHMR") appeals a judgment rendered for appellee Charles W. Ellison on two causes of action which were simultaneously tried before the trial court. The first cause of action was an application to remove appellee as the guardian of James L. Ellison, a resident of Mexia State School. The second cause of action was appellee's Motion for Recognition and Exemption of Homestead in which he sought to have 200 acres of the guardianship estate declared a rural homestead. We will affirm the trial-court judgment in both causes.

## BACKGROUND

James L. Ellison has been a resident of Mexia State School since 1964. James has an IQ of 17 and the capacity of an 11–month–old child. Appellee has served as James' guardian since 1978, watching over James' estate which consists solely of 451 acres of rural property. Since obtaining the court's approval in December 1980, appellee has leased this property and has consistently reported the rental income in the estate's annual accounts. TDMHMR has sought to force the sale of this property to satisfy expenses incurred in caring for James at the Mexia State School.

On July 30, 1987, TDMHMR obtained an agreed judgment for $90,530, the amount owed for James' support and maintenance during the period from January 1, 1979 through August 31, 1983. Further, on October 28, 1987, the county court ordered that the land in James' estate be sold in accordance with the 1987 agreed judgment. On November 5, 1991, TDMHMR obtained another agreed judgment in the amount of $222,769.50, constituting the amount owed for James' support and maintenance for the period of September 1, 1983 through August 31, 1990. These judgments have not been paid, and the land has not been sold.

On January 15, 1993, TDMHMR filed its first application to remove appellee as guardian for failure to comply with the 1987 court order to sell the property in James' estate. The county court dismissed the application and denied relief on June 9, 1993.

On May 17, 1994, appellee filed a Motion for Recognition and Exemption of Homestead. In this motion, appellee requested that 200 acres of the property in James' estate be set aside as his rural homestead. Citing numerous grounds for removal, TDMHMR responded by filing another application to remove appellee as James' guardian on May 31, 1994. The trial court sitting without a jury heard both of these matters on October 24, 1994. The court granted appellee's Motion for Recognition and Exemption of Homestead, but only recognized 100 acres. The court also denied TDMHMR's application to remove appellee as guardian, allowing appellee to recover his attorney's fees from James' estate.

## DISCUSSION

In its first point of error, TDMHMR claims the trial court abused its discretion in

failing to remove appellee as guardian when it was shown at trial that he committed multiple violations of the Texas Probate Code ("Code") and failed to act in the best interests of the ward. Specifically, the grounds for removal asserted by TDMHMR include: (1) failure to timely act on claims filed by the State against James' estate; (2) failure to sell the property in James' estate in accordance with the court order; (3) mismanagement of James' estate by failure to timely file an application for federal benefits; (4) failure to file a sworn, written report with the court when the rural property was leased, as required by statute; and (5) interference with James' participation in community placement programs.

■ A decision which rests within the sound discretion of the trial court will not be reversed absent a showing that it abused its discretion. *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 828 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). An abuse of discretion, however, implies more than an error in judgment; the trial court's decision must be arbitrary or unreasonable. *Landry v. Traveler's Ins. Co.*, 458 S.W.2d 649, 651 (Tex.1970). An appellate court must review the evidence in the light most favorable to the action of the trial court. *Parks v. United States Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd); *Stout v. Christian*, 593 S.W.2d 146, 151 (Tex.Civ.App.—Austin 1980, no writ). An appellate court cannot substitute its judgment for that of the trial court as long as the trial court did not abuse its discretion. *Landry*, 458 S.W.2d at 651.

■ TDMHMR first argues that appellee repeatedly failed to act on claims presented against the estate by TDMHMR thus constituting grounds for removal under section 797 of the Texas Probate Code. Section 797 provides that a claim against an estate is rejected by operation of law if a guardian fails to allow or to reject the claim within 30 days of its presentation to the guardian and that, if such a claim is later established, the guardian *may* be removed. Code § 797 (West Supp.1996). Appellee did not allow or reject the claims presented by TDMHMR, and thus the claims were deemed rejected by

operation of law. As a result of these rejections, TDMHMR was forced to institute suit on the claims. Appellee did, however, enter into two agreed judgments with TDMHMR concerning these claims against James' estate and did not deny the validity of those claims. The trial court, in its discretion under section 797, decided that appellee's failure to act on TDMHMR's claims was not sufficient to justify his removal as guardian.

■ TDMHMR next claims that appellee failed to obey a 1987 court order to sell the land owned by James' estate which may constitute grounds for removal under Code section 761(c)(3). On May 12, 1993, TDMHMR filed its first application to have appellee removed as James' guardian based solely on appellee's noncompliance with the 1987 court order. Such relief was denied by the county court on June 9, 1993. Appellee testified that in December 1993, shortly after the denial of TDMHMR's first application for removal, he entered into an agreement with Ms. Oglesby, an attorney for TDMHMR. Appellee testified that, since entering into and in accordance with the agreement, he has listed 351 acres of the property with two real estate brokers as well as in the newspaper, while reserving the remaining 100 acres for James' homestead. Further, appellee testified that the brokers had communicated with some prospective buyers but that nothing had materialized from such communications. The trial court was convinced that appellee "made every good effort to sell the property as ordered by the court."

■ TDMHMR also claims that appellee mismanaged James' property by failing to timely complete applications for federal benefits. According to TDMHMR, the application for Medicaid eligibility was sent to appellee on three separate occasions. However, appellee testified that he only received the third application, which was sent to him through his attorney. Further, according to appellee's testimony, he was unable to complete the application in full because he did not have access to some of the information concerning Medicare and Social Security which was in TDMHMR's possession. Appellee testified that he unsuccessfully at-

tempted to contact Ms. Oglesby at TDMHMR to obtain the missing information and that he was then forced to send her the incomplete application with a cover letter explaining the delay as well as why the application was not complete.

■ TDMHMR next contends that appellee failed to file written reports concerning the lease of James' property as required under Code section 845 and which may constitute grounds for removal under Code section 761(c)(2). TDMHMR does not dispute, however, that appellee included the lease income in his annual reports to the court. Further, the record contains appellee's Application to Rent Real Property, a Report of Rental, and the Order authorizing such a rental signed by the county court on December 2, 1980. Although he did not fully comply with section 845, appellee actually filed much of the required information with the court.

■ Finally, TDMHMR alleges that appellee interfered with James' progress and participation in community programs thus harming the ward and providing possible grounds for removal under Code section 761(c)(7). According to appellee, a group of eight or nine people meet annually to discuss James' situation. Among others, the group consists of a nurse, a psychologist, a social worker, a person in charge of the ward's training and, of course, appellee. Appellee testified that he participates and expresses his opinions in these "staffing" meetings, but that the group as a whole evaluates James' progress and makes decisions in his best interest. At the most recent meeting, the group decided that Mexia State School was still the best facility for the ward. The trial court noted that "speaking one's mind when one has a legal right to speak one's mind under the First Amendment is not interference."

■ The trial court is given full discretion over whether to remove a guardian for the grounds listed in Code sections 761 and 797. TDMHMR, the party seeking the guardian's removal in this case, had the burden to prove sufficient grounds. *See Youngs v. Choice,* 868 S.W.2d 850, 853 (Tex.App.—

Houston [1st Dist.] 1993, writ denied). The trial court found appellee "acted in every way as a reasonable, prudent guardian" and expressed concern that TDMHMR's pursuit of litigation had become "almost a personal vendetta" against appellee. Because it does not appear from the record that the court's decision was arbitrary or unreasonable, we hold that the trial court did not abuse its discretion in refusing to remove appellee as guardian of James Ellison and overrule TDMHMR's first point of error.

■ In its third point of error, TDMHMR argues that the trial court erred in granting appellee's request for attorney's fees. According to TDMHMR, those fees, incurred during appellee's defense against TDMHMR's second application to remove him as guardian, would not have arisen but for appellee's own failures which caused the removal application to be filed in the first place. In response, appellee contends that, because the trial court rejected TDMHMR's motion to remove him, it is implicitly assumed that the attorney's fees were not the result of malfeasance on his part.

"A guardian is entitled to be reimbursed from the guardianship estate for all necessary and reasonable expenses incurred in performing any duty as a guardian." Code § 666 (West Supp.1996). As we stated in overruling TDMHMR's first point of error, it was not unreasonable or arbitrary for the trial court to have found that appellee "acted in every way as a reasonable, prudent guardian." We disagree with TDMHMR's contention that appellee's attorney's fees were not necessarily incurred in the management of James' estate. TDMHMR failed to establish adequate grounds for removal of appellee as guardian in the eyes of the trial court, and thus, the trial court appropriately found appellee's attorney's fees to be necessary and reasonable expenses incurred in performing his duties as guardian. Further, we acknowledge that "[a]n opposite holding would indeed have a chilling effect on ... others' willingness to serve as guardian of estates or in other fiduciary capacities." *Moore ex rel. Moore v. First City Bank,* 707 S.W.2d 286, 287 (Tex.App.—Fort Worth 1986, no writ) (awarding attorney's fees to a guardian un-

der the authority of Tex.Prob.Code Ann. § 242 (West 1980)). Point of error three is overruled.

■ In its second point of error, TDMHMR claims the trial court erred in granting a homestead exemption to James. TDMHMR argues that appellee's Motion for Recognition and Exemption of Homestead was barred by the 1987 court order to sell James' property and that Ellison is estopped from asserting a homestead exemption because he did not raise the issue during the 1987 litigation. TDMHMR further points out that appellee filed an application for the sale of real property in October 1987 and that the application described the property to be sold as 451 acres without excluding acreage for a homestead.

In response, appellee contends that there is sufficient evidence to support the trial court's recognition of a 100–acre homestead for James. Appellee argues that, because homestead rights are not waivable, he maintains the power to establish a homestead on behalf of James.

■ The Texas Constitution allows a person to establish a homestead thereby exempting certain property from forced sale by general creditors. Tex. Const. art. XVI, § 50. The only debts that may be collected by foreclosure on the homestead are specifically listed in the Texas Constitution. *Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 634 (Tex.1987). In order to establish a homestead claim in rural property, a person must: (1) reside on part of the property; and (2) use the property for the purposes of a home. *Fajkus v. First Nat'l Bank,* 735 S.W.2d 882, 884 (Tex.App.—Austin 1987, writ denied). Residence on urban land usually precludes the claim of a rural homestead. *Id.* However, in *Gregory v. Sunbelt Savings, F.S.B.,* 835 S.W.2d 155 (Tex.App.—Dallas 1992, writ denied), the Dallas Court of Appeals stated:

The homestead character of property can be established prior to actual occupancy when the owner intends to improve and occupy the premises as a homestead. Preparations for that purpose must be of such a character and have proceeded to such an extent as to manifest, beyond a reasonable doubt, the intention to complete the improvements and to reside upon the place as a home.

*Id.* at 158; *see also Simank v. Alford,* 441 S.W.2d 234, 237 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.) (stating that a rural homestead may be claimed even before a dwelling is actually constructed on the land).

In this case, James has an IQ of 17 and the capacity of an 11–month–old child. He has resided in the Mexia State School since 1964. Testimony indicates that James has not left the facility to visit anywhere overnight since at least 1975 and that he has possibly never left the school. Appellee testified that he believed that James did not even know that he owned any property.

Appellee, however, testified that he, as James' guardian, became concerned a few years ago when there was some talk of closing the Mexia State School. Appellee believed that in December 1993 he entered into an agreement with Ms. Oglesby of the TDMHMR under which 351 acres would be sold for the benefit of TDMHMR and 100 acres would be set aside for James' homestead. Appellee had a trailer home, complete with kitchen, bathroom, bedroom, and living room, placed on James' property. Appellee testified as to his intention that James live on the property if James is ever denied residential care by either state or federal authorities.

■ Because James is incapable of forming the intent necessary to establish a homestead, appellee established that intent for him and has taken steps such that, if the need ever arises, James will be able to reside upon the 100 acres, even if he can do so only with the aid of a permanent caretaker. TDMHMR does not dispute that appellee, in his role as guardian, can establish a homestead in favor of James. Appellee is neither estopped nor prevented by res judicata from now applying for a homestead exemption simply because he did not bring up the homestead issue in the 1987 litigation. In fact, we believe appellee would be considered remiss in his duties as a guardian had he not now claimed a homestead exemption for James.

"[T]he courts have always given a liberal construction to the Constitution and Statutes to protect homestead rights." *Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *see Tolman v. Overstreet,* 590 S.W.2d 635, 637 (Tex.App.—Tyler 1979, no writ). Keeping with this policy of liberal construction and recognizing the unique situation of the ward in this case, we agree with the trial court's decision to approve the homestead application setting aside 100 acres for James rural homestead. Accordingly, point of error two is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.