James William **RILEY**, Bessie B. Goldfschmidt, And Marian R. Tepe, Appellants,

v.

Bobbie Neil **RILEY**, Administratrix of the Estate of Elbert E. Riley, Jr., Appellee.

No. 06–97–00087–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 1, 1998.

Decided June 29, 1998.

Ken Andrews, Graham, for appellant.

Jess N. Turner, III, Turner & Allen, Graham, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

James William Riley, Bessie B. Goldfschmidt and Marian R. Tepe, heirs of Elbert E. Riley, Jr., deceased, appeal from an order in probate court authorizing the conveyance to Bobbie N. Riley, Administratrix of the Estate of Elbert E. Riley, Jr., of all the separate real property of the estate in satisfaction of her claim for reimbursement. Appellants are the surviving half-brother, sister, and half-sister of Elbert E. Riley, Jr., deceased. Appellee, Bobbie N. Riley, Administratrix of the Estate of Elbert E. Riley, Jr., is the surviving wife of Elbert E. Riley, Jr.

Appellants contend that the probate court erred in granting Bobbie Riley's request for conveyance of property from the separate estate of Elbert E. Riley, Jr., to settle a claim for reimbursement of the community estate. Appellants also contend that Bobbie Riley's homestead interest in the mineral-producing property is limited and, therefore, the probate court should have provided for a credit against the reimbursement claim. Appellants do not challenge the order allowing conveyance based on any conflict of interest due to Bobbie Riley's capacity as representative of the separate estate and the community estate, and they do not challenge the evidence of the fair market value of the property at issue.

This case was initiated in August 1994, when Bobbie Riley filed a claim for reimbursement on behalf of the community estate from the separate estate of her deceased husband. The reimbursement claim stemmed from payments made by the community estate on Elbert Riley's separate debts, the payment of taxes and insurance on his separate property, and improvements made to his separate property. On May 18, 1995, over Appellants' objection to the claim, the probate court ordered reimbursement against the separate estate in the amount of $124,455.46. Appellants appealed the order, which was affirmed by the Second Court of Appeals. Therefore, the amount of the reimbursement claim is not an issue before this Court.

Bobbie Riley filed an Application for Authority to Settle Claim by Directing Conveyance of Property on May 26, 1995. The application was heard, and on March 14, 1997, an order was entered allowing Bobbie Riley to execute a Special Warranty Deed on behalf of the estate, conveying to the community estate all of the separate real property of the estate in satisfaction of the community estate's reimbursement claim. Appellants appeal that order.

Two pieces of property are at issue in this case. At the time the Rileys married, Elbert Riley owned land known as the Home Place (160 acres) and the River Place (74.7 acres). The Rileys lived on the Home Place throughout their marriage. Bobbie Riley has continued to live there since Elbert Riley's death. The Rileys farmed and ranched all of the property during their marriage for part of their support. The River Place, consisting of two tracts, 59.7 acres and 15 acres, was subject to an oil and gas lease when they married, and there has been production of oil and gas from the property.

Appellants contend that the conveyance of real property was an incorrect remedy for payment of a claim against Elbert Riley's estate. The proper remedy, they assert, is

for the claimant to present the claim to the representative for payment, and if no funds were available to pay the claim, the court should have ordered the sale of such estate property to satisfy the claim. Bobbie Riley argues that the sale of property is not the exclusive remedy for satisfying a claim against an estate.

To support their position, Appellants cite *Bailey v. Cherokee County Appraisal District*[1] and *White v. Pope*.[2] *Bailey* involved a delinquent tax suit in which the court held that ad valorem taxes accruing during administration are classified as claims against the estate and that the heirs of the estate are not personally liable for such claims while the estate remains under administration.[3] The court also stated that, if funds on hand are insufficient to satisfy the payment of a creditor's claim, the court *may* order the sale of estate property pursuant to Section 326 of the Probate Code.[4] Appellants rely on this language as support for their argument that property *must* be ordered sold to satisfy a claim against that estate.

*White* involved an attorney's application to require an estate to sell certain property to pay his legal fees. In *White,* the court recognized that Section 326 expressly authorizes the probate court to order the sale of property of the estate to satisfy a claim if there are no available funds and if to await funds from other sources would unreasonably delay payment.[5] However, in *White,* no application was made for conveyance of property of the estate to satisfy the outstanding claim, which is the situation in the case before this Court.

The question, then, is whether the probate court's order allowing Bobbie Riley as administratrix to convey the separate real property to the community estate in satisfaction of the reimbursement claim was proper.

■ Section 234 of the Probate Code[6] sets out the proper exercise of an estate administrator's power. That section provides that, when a personal representative deems it for the interest of the estate, the representative may, upon written application to the court, and by order granting authority, "make compromises or settlements in relation to property or claims in dispute or litigation."[7] It is this language that Bobbie Riley relies on as authority for the conveyance.

Section 234 limits the authority to make compromises and settlements to property or claims in *dispute or litigation*. The terms "compromise" and "settlement" themselves contemplate a controversy or disagreement. When Bobbie Riley filed her application on May 26, 1995 to settle the community's claim against Elbert Riley's separate estate, the probate court had entered its order regarding the amount of the community's reimbursement claim. However, subsequent to the application, the Appellants filed a motion for new trial and, upon its denial, a notice of appeal. The probate court's order was upheld on appeal. Subsequently, on March 14, 1997, Bobbie Riley's application was granted. Therefore, there is no continuing controversy about the existence of indebtedness or the amount of the indebtedness owed by the separate estate to the community estate. Such dispute has been resolved.

Also, for Section 234(a)(4) to apply, the *property or claim* must be in dispute or litigation. The property was not part of a dispute at the time Bobbie Riley filed her application to convey the property. Appellants do not complain of the evidence relating to the fair market value of the land at issue. Furthermore, the statute contemplates a settlement or compromise of a dispute between the estate and a claimant. Obviously, Bobbie Riley, as administratrix of the separate estate, did not dispute the claim she made on behalf of the community estate. Her application to convey the property in satisfaction of the community's reimbursement was not

---

1. 862 S.W.2d 581 (Tex.1993).

2. 664 S.W.2d 105 (Tex.App.-Corpus Christi 1983, no writ).

3. *Bailey,* 862 S.W.2d at 583.

4. *Id.* at 585.

5. *White,* 664 S.W.2d at 108.

6. TEX PROB.CODE ANN. § 234 (Vernon 1980 & Supp. 1998).

7. TEX. PROB.CODE ANN. § 234(a)(4).

made as a compromise or settlement of a dispute or litigation. Because no dispute or litigation relating to the property existed, Bobbie Riley did not have the authority to convey the property as a compromise or settlement in relation to a dispute or litigation.

■ Authority for the conveyance comes from Probate Code Section 234(a)(1), which permits the "purchase or exchange" of property when a personal representative deems it for the interest of the estate and with authority from the court.[8] The property awarded has a value less than the amount of the claim. The reimbursement ordered from the separate property estate was for $124,455.46; the property conveyed in satisfaction of that order was valued at $118,435.00. Bobbie Riley, as representative of the separate estate, sought to exchange the property for the release of the community estate's claim. Therefore, Bobbie Riley had the authority to apply for conveyance of real property without having to first sell that property to satisfy a claim against the estate.

We recognize that Section 352 of the Probate Code [9] prohibits a personal representative of an estate from directly or indirectly purchasing property of the estate except under limited circumstances. However, Appellants have not challenged the court's order allowing conveyance of the property as an improper sale. Therefore, we do not address Bobbie Riley's actions, as administratrix, under this section. Instead, we view the conveyance as satisfaction of a debt owed by the estate, not as a purchase or sale.

We hold that the probate court's order allowing the conveyance of property in satisfaction of the reimbursement claim was proper. This point of error is overruled.

■ Appellants also argue that the probate court erred in allowing conveyance of the separate real property because Bobbie Riley has a homestead right in only 100 acres of the separate real property of her deceased husband's estate and, therefore, did not have homestead rights in the separate property oil and gas production of the estate.

By statute, a single person living alone is entitled to 100 acres as a rural homestead.[10] Appellants argue that Bobbie Riley is only entitled to homestead rights in 100 acres, and because she lives in a home on the property in question, the homestead would logically be located where the home is located, the 160-acre Home Place tract. The River Place, which produces oil and gas royalties, would be excluded from Bobbie Riley's homestead, they argue. Further, Appellants contend *they are entitled to one half of the approximately $36,000 in oil and gas royalties received by Bobbie Riley since Elbert Riley's death, pursuant to Section 38 of the Probate Code,[11] which sets out the rules of descent and distribution in cases of intestacy.*

Section 41.002(b)(2) of the Property Code deals with exemption from creditors and states that, for a single, adult person, for the purposes of a rural home, the homestead shall consist of not more than 100 acres, which may be in one or more parcels, with the improvements thereon, *if that person is not otherwise entitled to a homestead.*[12] Bobbie Riley is "otherwise entitled to a homestead" under Sections 282 and 283 of the Probate Code [13] and Article XVI, Section 52 of the Texas Constitution, which gives a deceased spouse's survivor and minor children the right to occupy the homestead for life.

The Texas Constitution sets out the definition and acreage limitations of homesteads as 200 acres.[14] Section 271 of the Probate Code provides that in administering an estate, the court shall "set apart for the use and benefit of the surviving spouse and minor children

---

8. Tex. Prob.Code Ann. § 234(a)(1) (Vernon Supp. 1998).

9. Tex. Prob.Code Ann. § 352 (Vernon Supp.1998).

10. Tex. Prop Code Ann. § 41.002(b)(2) (Vernon Supp.1998).

11. Tex. Prob.Code Ann. § 38 (Vernon 1980).

12. Tex. Prop.Code Ann. § 41.002(b)(2) (Vernon Supp.1998).

13. Tex Prob.Code Ann. §§ 282, 283 (Vernon 1980).

14. Tex. Const. art XVI, §§ 50–52.

and unmarried children remaining with the family of the deceased, all such property *of the estate* as is exempt from execution or forced sale by the constitution and laws of the state."[15] Section 272 provides that "the homestead shall be delivered to the surviving spouse, if there be one, and if there be no surviving spouse, to the guardian of the minor children and unmarried children, if any, living with the family."[16]

During their marriage, the Rileys were entitled to claim a rural homestead of 200 acres on Elbert Riley's separate property land.[17] A surviving spouse has the same homestead rights in the property as both spouses had prior to the death of one spouse.[18] The status of the homestead is immediately ascertainable upon the death of the decedent.[19] Bobbie Riley is rightfully entitled to 200 acres as her homestead under the Texas Constitution.

■ We next address whether homestead acreage can be comprised of different parcels. If used for the purposes of a rural home, the homestead *may be in one or more parcels.*[20] To establish a homestead claim in rural property, the claimant must reside on part of the property and use the property for purposes of a home, although the claimant need not reside on all the parcels so long as the other tracts are used for the support of the family.[21] Bobbie Riley is entitled to 200 acres and to designate which 200 acres she wants to claim as her homestead as long as it is part of the property used by the family for homestead. She claims a homestead in 140 acres of the Home Place and 59.7 acres of

the River Place, including the production of oil and gas.

The question, then, is whether a claimant may select only a portion of that land on which her home is located so that she may also select a portion of land elsewhere to make up her 200 acres of homestead. Specific to this case, may Bobbie Riley designate as her homestead a 140–acre portion of the 160 acres which is the site of her residence so that she can also designate 59.7 mineral-rich acres elsewhere?

■ A homestead claimant *may* exclude part of a tract actually occupied to obtain more acreage in another tract.[22] However, such claimant must show that the second tract satisfies the requirement that the land is used for support of the family.[23] Bobbie Riley testified that both parcels of property were farmed and ranched during the marriage for their support and that both parcels are presently used for running livestock. Testimony that cattle is grazed on the property shows use of the property in a manner which establishes homestead rights.[24] Bobbie Riley also testified that the River Place has been oil- and gas-producing property since her marriage to Elbert Riley. The evidence supports the conclusion that the Rileys used the properties in such a manner as to establish homestead rights in the properties.

Bobbie Riley may properly designate as her homestead a 140–acre portion of the 160–acre Home Place, which is the site of her residence, and also designate 59.7 acres of the River Place.

**15.** Tex. Prob.Code Ann. § 271(a) (Vernon Supp. 1998) (emphasis added).

**16.** Tex Prob.Code Ann. § 272 (Vernon 1980).

**17.** Tex. Const. art. XVI, § 51.

**18.** Tex. Const. art. XVI, § 52; Tex. Prob.Code Ann. §§ 282, 283 (Vernon 1980); *Hunter v. Clark,* 687 S.W.2d 811, 814 (Tex. App–San Antonio 1985, no writ).

**19.** *National Union Fire Ins. Co. of Pittsburgh v. Olson,* 920 S.W.2d 458, 462 (Tex.App.—Austin 1996, no writ).

**20.** Tex Prop.Code Ann. § 41.002(b)(1) (Vernon Supp.1998).

**21.** *NCNB Texas Nat'l Bank v. Carpenter,* 849 S.W.2d 875, 879 (Tex.App.—Fort Worth 1993, no writ).

**22.** *Affleck v. Wangemann,* 93 Tex. 351, 55 S.W. 312, 313 (1900); Mayfield Co. v. Pepper, 76 S.W.2d 216, 217 (Tex.Civ.App.—Texarkana 1934), *rev'd on other grounds,* 129 Tex. 307, 103 S.W.2d 737 (1937).

**23.** *Carpenter,* 849 S.W.2d at 879.

**24.** *Fajkus v. First Nat'l Bank of Giddings,* 735 S.W.2d 882, 884 (Tex.App.—Austin 1987, writ denied).

Appellants argue that they are entitled to one half of the royalties received by Bobbie Riley since the date of Elbert Riley's death. Bobbie Riley argues that she is entitled to claim a homestead in the oil and gas royalties under the "open mine doctrine."

The open mine doctrine is an exception to the general rule that a life tenant is entitled to nothing but interest on mineral royalties and bonuses.[25] Under the open mine doctrine, a homestead claimant is entitled to receive and expend all oil and gas royalties from the homestead, where the homestead property was producing oil or gas when the right in the property came into existence.[26] Because the 59.7 acres Bobbie Riley has designated as her homestead were producing at the time her homestead rights in the property came into existence, she is entitled to the royalties from that designation.

However, Bobbie Riley's homestead designation did not include the 15–acre River Place tract. Therefore, the open mine doctrine does not apply to this tract. We have held that the probate court's order dated March 14, 1997, properly granted conveyance of all real property, including the 15–acre River Place tract, to Bobbie Riley. Therefore, the only issue left to be decided is whether Appellants are entitled to a portion of the royalties received from the remaining 15 acres, if such acreage was producing, from the date of Elbert Riley's death to the date of the conveyance.

Oil and gas are realty when in place and personalty when severed from the land by production.[27] At the time of Elbert Riley's death, the minerals in place on the 15–acre River Place tract were realty and passed to his heirs, one half to Bobbie Riley and one half to Appellants.[28] Therefore, Appellants are entitled to one half of any royalties attributable to production from the 15–acre tract from the time of Elbert Riley's death to the time the property was conveyed to Bobbie Riley to reimburse the community estate.

At oral argument, Bobbie Riley argued that all of the royalties received since Elbert Riley's death have been used to pay the debts of the estate and, therefore, cannot be distributed to Appellants. There is no evidence in the record of such use of the royalties.

Bobbie Riley also asserted at oral argument that her homestead designation entitles her to *all* of the royalties from the River Place because her designation includes the bore sites of the producing wells on the River Place property. As support, Bobbie Riley cites the "rule of capture." The rule of capture is a doctrine of nonliability for drainage.[29] Under the rule of capture, the owner of a tract of land acquires title to the oil or gas produced from wells on his land, though part of the oil or gas may have come from adjoining lands.[30] The rule of capture applies when separate tracts are above a common source of supply.[31] However, this rule does not apply to production from land within a pooled unit.[32]

> Where tracts are pooled or a unit operation plan is in force, the rule of capture is, in a way, abrogated in those instances where a landowner or lessee participates in production from a well on another's land, though there be no well on his own, or

25. *Clyde v. Hamilton,* 414 S.W.2d 434, 439 (Tex. 1967).

26. *Id.; Youngman v. Shular,* 155 Tex. 437, 288 S.W.2d 495 (1956).

27. *Phillips Petroleum Co. v. Adams,* 513 F.2d 355, 363 (5th Cir.1975); *Humble Oil & Refining Co. v. West,* 508 S.W.2d 812, 814 (Tex.1974).

28. Tex. Prob.Code Ann. § 38(b)(2) (Vernon 1980).

29. *Glassell v. Ellis,* 956 S.W.2d 676, 687 (Tex. App.—Texarkana 1997, no writ), *citing Bender v.*

*Brooks,* 103 Tex. 329, 127 S.W. 168, 168–69 (1910).

30. *Elliff v. Texon Drilling Co.,* 146 Tex. 575, 210 S.W.2d 558, 561–62 (1948).

31. *Arkla Exploration Co. v. Haywood, Rice & William Venture,* 863 S.W.2d 112, 121 (Tex. App.—Texarkana 1993, writ dism'd by agr.), *citing Halbouty v. Texas Railroad Commission,* 163 Tex. 417, 357 S.W.2d 364 (1962).

32. *Russell v. City of Bryan,* 846 S.W.2d 389 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

where, the well being on his land, he must give up part of the production to another.[33]

 We have found nothing in the record to indicate the extent to which the River Place tracts are part of a pool or unit or whether royalty was paid attributable to that acreage. Also, nothing in the record indicates whether the 15–acre tract is a part of a producing tract or, if it is, the amount of royalties Bobbie Riley received attributable to that tract. Without this evidence, we are unable to determine whether Bobbie Riley is entitled to keep all of the royalties.

In the interest of justice, we sever and remand for a new trial the portion of the case involving the royalties, if any, paid attributable to the 15–acre tract. The probate court shall determine if the Appellants are entitled to a share of the royalties received by Bobbie Riley from the time of Elbert Riley's death to the time the 15 acres were conveyed to Bobbie Riley and permit a claim against the estate or Bobbie Riley for any funds due to Appellants. The order of the probate court in all other respects is affirmed.

---

**33.** Robert E. Hardwicke, *The Rule of Capture and Its Implications as Applied to Oil and Gas,* 13 TEX L. REV. 391, 418 (1935).