TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00632-CV






Henry Chang, Appellant



v.



Family Eldercare, Inc., Appellee






FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 70,980, HONORABLE GUY S. HERMAN, JUDGE PRESIDING 






 Appellant Henry Chang appeals pro se from an order appointing Family Eldercare,
Inc. as guardian of the person and the estate of his brother, David Chang ("David"). In four
points of error, appellant alleges the probate court erred when it appointed Family Eldercare,
instead of him, as David's guardian. We affirm the trial court's judgment.


Background

 At a trial before the court, the parties agreed that David was incapacitated. David
came to the United States with his family in 1962. Before moving to Austin with his father,
David attended high school in Houston until he became mentally ill. For many years, David was
institutionalized at the Austin State Hospital. 

 After their father died in 1996, appellant was named executor of the estate. David
was released from the Austin State Hospital to live in a group home but, because of the language
barrier, the placement was not satisfactory. In 1997, David came to live with appellant until he
was hospitalized for a broken arm and then placed in a nursing home. Appellant testified that he
removed David from the nursing home against medical advice.

 Over the next two years, David continued to live with appellant. On one occasion,
David burned himself by spraying oven cleaner on his leg. Appellant testified that he provided
everything David needed to live and that he was careful not to give David too much money at one
time to prevent him from spending it on oven cleaner. Appellant also testified that he left David
alone during the day while he was at work and when he left town on business, but that he always
left David with ample food and cigarettes. Appellant further testified that he felt David could care
for himself even though he was aware that David had "over-medicated" himself on prior
occasions.

 Laura Casarez, an Adult Protective Service ("APS") specialist with the Texas
Department of Protective and Regulatory Services, testified that she had visited appellant's
residence on March 3, 2000 in response to a referral after appellant had removed David from the
nursing home. She found David alone in a house in "disarray," with boxes and papers all over
the place, including the kitchen and living room, and mattresses without sheets piled on top of
each other. Casarez concluded that the house was not safe for David because of previous reports
to APS that he had left the stove on and had started fires. Although David told Casarez that he
was taking his medication, he was unable to tell her where it was located. Casarez left her
business card with a message for appellant to call her. In the days following this visit, Casarez
placed several telephone calls to appellant, but was unable to speak with him.

 In mid-March, Casarez received another referral concerning David, and she visited
appellant's house again after trying to contact someone at the residence by telephone. When no
one answered the door, she returned to the office and was able to reach appellant on the telephone. 
Because the referral indicated that appellant was leaving town and would be leaving David alone
for two or three days, Casarez expressed concern for David's health and safety. Specifically,
Casarez explained that, because David had burned himself in the past and had been hospitalized
for a broken arm and hypertension, she was concerned that he not be left by himself for an
extended period of time.

 Appellant insisted that David would be fine, assuring Casarez that David had food
and would administer his own medication as he had been doing. He acknowledged that David had
made mistakes with his medication. Casarez also expressed her concern regarding the fire hazard
posed by the clutter throughout the house and David's access to the stove. Casarez testified that
while appellant acknowledged that at times David forgot to turn off the stove, he again insisted
that David would "be fine." Casarez offered to allow David to stay in a nursing home over the
weekend at no expense to the family, but appellant declined the offer. Casarez's supervisor then
spoke with appellant to convey again the nursing home offer, and appellant again declined. 

 The next day, Casarez returned to appellant's house, but no one responded when
she knocked on the door. Once again, she left her business card. Recalling that appellant was
leaving town, Casarez decided to visit appellant's house the following day. Again, no one
responded when she knocked on the door. After consulting with David's nursing home doctor
who expressed concern that David was not competent to take care of himself, Casarez returned
to appellant's residence with a co-worker. They removed David when they found him alone in
the house in a stupor with a pot of water boiling on the stove. David did not respond to their
questions.

 In December 1998, appellant filed an application seeking to be appointed guardian
of David's person and estate. In May 2000, Family Eldercare filed an amended application for
the appointment of guardian. Following a bench trial, the court concluded that appellant was
disqualified to serve as guardian and rendered judgment, appointing Family Eldercare as guardian
of David's person and estate. Appellant did not file a motion for new trial and did not object to
any evidence adduced at trial.


Standard of Review

 A trial court has broad discretion in the selection of a guardian. Trimble v. Texas
Dep't of Protective & Regulatory Serv., 981 S.W.2d 211, 214 (Tex. App.--Houston [14th Dist.]
1998, no pet.); Ramirez v. Garcia de Bretado, 547 S.W.2d 717, 718 (Tex. Civ. App.--El Paso
1977, no writ). An appellate court will not reverse an order appointing a guardian absent a
showing that the trial court abused its discretion. Trimble, 981 S.W.2d at 214. A trial court
abuses its discretion when it acts without any guiding principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The test is whether the court's action was
arbitrary or unreasonable. Id. at 242. In determining whether there has been an abuse of
discretion, we view the evidence in the light most favorable to the action of the trial court. Texas
Dep't of Mental Health & Mental Retardation v. Ellison, 914 S.W.2d 679, 683 (Tex. App.--Austin
1996, no writ). An abuse of discretion does not occur as long as some evidence of substantive
and probative character exists to support the trial court's decision. Texas Dep't of Health v.
Buckner, 950 S.W.2d 216, 218 (Tex. App.--Fort Worth 1997, no pet.).


DISCUSSION


 In his first point of error, appellant contends that the trial court erred in admitting
a physician's certificate as an exhibit at trial because it was illegally obtained as a product of
David's illegal detention. Because this exhibit was admitted by agreement and appellant did not
raise the issue of illegal detention at trial, no error is preserved for appeal. Tex. R. App. P. 
33.1(a). Appellant's first point of error is overruled.

 Appellant next complains that David was deprived of his right to due process of
law under the United States and Texas Constitutions because the court failed to provide him with
an interpreter at trial. Because of David's difficulty with the English language, appellant contends
that the court should have provided an interpreter to facilitate communication between "the ward
[David] and the attorney." Again, appellant did not object at trial or otherwise preserve error. 
Id. 

 Section 646(d) of the Texas Probate Code provides for the appointment of an
interpreter "if necessary to ensure effective communication between the . . . ward and the
attorney." Tex. Prob. Code Ann. § 646(d) (West Supp. 2001). When David's guardian ad litem
asked David at trial whether he would like to testify, David declined. Further, neither party
requested an interpreter for David or sought his testimony with or without the assistance of an
interpreter. When an aunt testified with some language difficulty, the court declined appellant's
offer to translate for her. It is within the court's discretion to determine whether an interpreter
will assist communication between the ward and his attorney. Absent a showing that the trial
court abused its discretion, we will not disturb its decision. Appellant's second point of error is
overruled.

 In his third point of error, appellant contends that the trial court erred in not
appointing him the permanent guardian of David's person and estate because the evidence is
insufficient to disqualify him. The record establishes that appellant was not qualified to serve as
guardian of the ward's person or estate. After being appointed executor of their father's estate,
appellant failed to distribute any of the estate's assets to David or to maintain David's monies in
an account separate from his own. Moreover, appellant failed to produce any documents
demonstrating that any of the assets of his father's estate had been distributed to David even
though the estate had been ongoing for four years. The record also reveals that appellant obtained
a power of attorney from David to transact real estate business relating to the estate although he
claimed that David had been incapacitated for twenty years. 

 The court expressed concern that David had been left alone at appellant's house in
light of appellant's testimony that a relative of the two men who suffered from a mental illness
would arrive at the residence unannounced and had previously destroyed property at the house. 
Expressing additional concerns about health and safety hazards at the house, the court concluded
that appellant was unqualified and appointed Family Eldercare to serve as guardian. After a
careful review of the record, we cannot conclude the court abused its discretion and conclude that
the trial court had sufficient evidence to disqualify appellant. Appellant's third point of error is
overruled.

 In his final point of error, appellant asserts that the court erred in not appointing
David's mother or aunt as guardian after the court disqualified appellant. Because appellant did
not raise this issue at trial, he failed to preserve it for review. Tex. R. App. P. 33.1(a).
Appellant's fourth point of error is overruled.


CONCLUSION


 Accordingly, the judgment of the trial court is affirmed.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: March 29, 2001

Do Not Publish



n, we view the evidence in the light most favorable to the action of the trial court. Texas
Dep't of Mental Health & Mental Retardation v. Ellison, 914 S.W.2d 679, 683 (Tex. App.--Austin
1996, no writ). An abuse of discretion does not occur as long as some evidence of substantive
and probative character exists to support the trial court's decision. Texas Dep't of Health v.
Buckner, 950 S.W.2d 216, 218 (Tex. App.--Fort Worth 1997, no pet.).


DISCUSSION


 In his first point of error, appellant contends that the trial court erred in admitting
a physician's certificate as an exhibit at trial because it was illegally obtained as a product of
David's illegal detention. Because this exhibit was admitted by agreement and appellant did not
raise the issue of illegal detention at trial, no error is preserved for appeal. Tex. R. App. P. 
33.1(a). Appellant's first point of error is overruled.

 Appellant next complains that David was deprived of his right to due process of
law under the United States and Texas Constitutions because the court failed to provide him with
an interpreter at trial. Because of David's difficulty with the English language, appellant contends
that the court should have provided an interpreter to facilitate communication between "the ward
[David] and the attorney." Again, appellant did not object at trial or otherwise preserve error. 
Id. 

 Section 646(d) of the Texas Probate Code provides for the appointment of an
interpreter "if necessary to ensure effective communication between the . . . ward and the
attorney." Tex. Prob. Code Ann. § 646(d) (West Supp. 2001). When David's guardian ad litem
asked David at trial whether he would like to testify, David declined. Further, neither party
requested an interpreter for David or sought his testimony with or without the assistance of an
interpreter. When an aunt testified with some language difficulty, the court declined appellant's
offer to translate for her. It is within the court's discretion to determine whether an interpreter
will assist communication between the ward and his att