TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03- 03 -00 565 -CV





Bernard Majeski , Appellant

v.

Estate of Sarah Bishop Majeski, Deceased , Appellee





FROM THE COUNTY COURT AT LAW OF COMAL COUNTY

NO. 2000-PC-0228 , HONORABLE BRENDA CHAPMAN , JUDGE PRESIDING

 

O P I N I O N

Geraldine Wesch is the daughter of the decedent, Sarah Bishop Majeski (ABishop@), and appellant Bernard Majeski was Bishop=s husband for more than twenty years. After
Bishop=s death, a dispute arose between Wesch, as administrator of Bishop=s estate, and Majeski.  Both sought control of a tract of land owned by Bishop before her marriage and
on which she and Majeski lived and worked.  Majeski claimed a homestead right as Bishop=s surviving spouse, see Tex. Const. art. XVI, '52, and Wesch argued that the rental of
portions of the property defeated Majeski=s homestead rights.  The trial court granted summary judgment in favor of Wesch, and Majeski appeals.  We reverse the judgment and
remand the cause to the trial court for further proceedings.


Before marrying Majeski, Bishop acquired as her separate property a 5.851-acre tract of land in Schertz, Texas.  Bishop operated a bar and pool hall, called the Bishop Center, on the
property, and lived in the same building.  After she married Majeski, they lived in and operated the Bishop Center together.  A parking lot lies in front of the Bishop Center, and
behind it is a yard and a fence that separates the rest of the property.  On the property behind the fence are several mobile homes and rental homes, some of which are uninhabitable,
several mobile home lots, junk cars, pieces of equipment, a service station, and a billboard.  Both before and during the marriage, several of the structures behind the fence were
rented to third parties.  

Bishop died intestate in February 2000, survived by Majeski, Wesch, and two other adult children from a previous marriage.  Wesch was appointed independent administrator of
Bishop=s estate and filed an inventory of the estate, listing the 5.851 acres as Bishop=s separate property and stating that there were no outstanding claims against the estate.  When
Wesch informed Majeski that she would begin collecting payments from the rental properties, Majeski sought a temporary restraining order seeking to have Wesch barred from
interfering with Majeski=s use of the property and from exercising authority or management over the property.  Majeski also sought a judgment declaring the 5.851 acres, including
any improvements, rental properties, and businesses, to be Majeski=s homestead, claiming a life estate in the property as Bishop=s surviving spouse.  The trial court granted a
temporary restraining order but later, faced with competing motions for summary judgment filed by Majeski and Wesch, granted summary judgment in Wesch=s favor finding that
Majeski=s homestead consisted only of the Bishop Center, the fenced yard behind the building, and the parking lot.  The remainder of the property behind the fence was found not to
be his homestead because it was not used for homestead purposes or to exercise a business or calling.


Majeski appeals, arguing that he is entitled to claim the entire tract as his homestead and that Wesch=s motion did not assert specific grounds for summary judgment.  Wesch asserts
that the order from which Majeski appeals is interlocutory.  We hold that the order was final and appealable and agree that Majeski established that the Bishop Center and its
surrounding parking lot and yard were his homestead.  We hold that there is a question of fact as to the homestead status of the remaining property behind the fence, reverse the trial
court=s granting of summary judgment in Wesch=s favor on that issue, and remand the cause to the trial court for further proceedings.

 

Is the Trial Court=s Order Final and Appealable?

Wesch filed her administrator=s inventory in the trial court as part of the probate of Bishop=s estate.  After Wesch contacted Majeski to state she would be taking control of the
property beyond the fence, Majeski sought a declaration that the entire property was his homestead.  Wesch countered, asking the court to determine what portion of the property was
Majeski=s homestead.  She also asked the court to declare Athe value and character of all items of personal property@and what assets should be given to Majeski as Bishop=s
surviving spouse and to deduct from Majeski=s share of the estate Athe value of all assets not accounted for which [were] in his possession.@ Both sides moved for summary
judgment on the issue of the homestead status of the property.  Wesch asserts that the trial court=s order was not a final order because the court did not address her counter-petition
requests related to the other assets held by Majeski.  We disagree.


We may only consider appeals from final and appealable orders or from interlocutory orders over which we are given statutory jurisdiction. See Stary v. DeBord, 967 S.W.2d 352,
352-53 (Tex. 1998).  The probate code grants appellate courts jurisdiction over A[a]ll final orders of any court exercising original probate jurisdiction.@ Tex. Prob. Code Ann. '5(g)
(West Supp. 2004-05).  This has been interpreted to mean that we may consider an appeal from an order that, while not a final disposition of a probate matter consisting of a
continuing series of events, Aadjudicate[s] conclusively a controverted question or substantial right.@ Logan v. McDaniel, 21 S.W.3d 683, 688 (Tex. App.CAustin 2000, pet.
denied).  If no express statute declares a phase of a probate proceeding to be final and appealable, we must consider whether the order is part of a proceeding that left unresolved
issues or whether the order Aconcluded a discrete phase@ of the proceedings.  Id. at 688-89.

Once an administrator of an estate files an inventory and list of approved claims, a surviving spouse must seek to have Aexempt property@ excluded and set aside for the spouse=s
use.  Tex. Prob. Code Ann. ' 271 (West 2003).  The only dispute at issue at this stage of the probate proceeding was the homestead status of the property.  Although Wesch asserted
claims related to other assets, those questions were separate from the homestead issue.  The trial court=s order made a final resolution of the homestead issue as to the entire tract of
land.  Therefore, we hold that the order Aconcluded a discrete phase@ of the proceedings and is final and appealable.  See Logan, 21 S.W.3d at 689.  We overrule Wesch=s motion
to dismiss the appeal for lack of jurisdiction.

 

Homestead Status of the Property

Standard of Review


Majeski moved for a Atraditional@ summary judgment under rule 166a of the rules of civil procedure, asserting that the evidence established that he was entitled to judgment as a
matter of law that the entire 5.851 acres should be considered his homestead.  See Tex. R. Civ. P. 166a(c).  Wesch countered with a motion for summary judgment asserting that the
evidence established as a matter of law that Majeski cannot claim the entire tract as his homestead and aAno-evidence@motion, asserting that there was no evidence to prove
Majeski=s case. See Tex. R. Civ. P. 166a(i).

A Atraditional@motion for summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.CAustin 2000,
no pet.).  A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff=s theories of recovery or plead and prove as a matter of
law each element of an affirmative defense.  Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  

A party seeking a Ano-evidence@ summary judgment, on the other hand, does not bear the burden of establishing her right to judgment by proving a defense or claim, but instead
asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial.  Tex. R. Civ. P. 166a(i);Holmstrom,
26 S.W.3d at 530.  If the nonmovant produces more than a scintilla of probative evidence raising a genuine issue of material fact as to an essential element on which he has the
burden of proof, a no-evidence summary judgment is improper.  Tex. R. Civ. P. 166a(i); Holmstrom, 26 S.W.3d at 530.  


In reviewing the granting of a summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the
nonmovant=s favor.  Centeq Realty, 899 S.W.2d at 197.  If both parties move for summary judgment, we determine all questions presented and render the judgment the trial court
should have rendered.  Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).  An interested party=s testimony, whether live or through an affidavit[1],may only be used as
summary judgment evidence if it is uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being controverted.  Tex. R. Civ. P. 166a(c); Trico
Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997).  Summary judgment is improper if based on testimony by an interested witness that does not meet all of the above
requirements.  See Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989). 


The Texas Constitution provides special protections for homestead property beyond the protections given to other types of property. See Tex. Const. art. XVI, '50.  A homestead is a
constitutionally created legal interest that protects a property from all but a few specifically enumerated kinds of liens that may be imposed against a homestead.  Heggen v. Pemelton,
836 S.W.2d 145, 148 (Tex. 1992).  Courts must liberally construe constitutional and statutory homestead provisions to protect the homestead.  Whiteman v. Burkey, 282 S.W. 788,
789 (Tex. 1926); State ex rel Texas Dep=t of Mental Health & Mental Retardation v. Ellison, 914 S.W.2d 679, 685 (Tex. App.CAustin 1996, no writ).  When a spouse dies, the
surviving spouse retains the full homestead rights that the couple enjoyed before the death of the spouse.  Riley v. Riley, 972 S.W.2d 149, 154 (Tex. App.CTexarkana 1998, no
pet.);see Tex. Const. art. XVI, '52; Tex. Prob. Code Ann. ''282, 283 (West 2003).  Even if the property was the deceased spouse=s separate property, the surviving spouse may
continue to use and occupy the property as long as he does not abandon the homestead.  Tex. Const. art. XVI, '52; Tex. Prob. Code Ann. '282; Copeland v. Tarrant Appraisal Dist.,
906 S.W.2d 148, 151 (Tex. App.CFort Worth 1995, writ denied).  Once property has been designated as a homestead, it will only lose that character through abandonment, death, or
alienation. See Patterson v. First Nat=l Bank of Lake Jackson, 921 S.W.2d 240, 246 (Tex. App.CHouston [14th Dist.]1996, no writ) (AOnce a homestead right is established, it can
only be lost during the claimant=s life by abandonment or voluntary conveyance.  Moreover, once a homestead has been shown to exist, there is a presumption that the homestead
continues in the absence of evidence to the contrary.@  (citation omitted)); Farrington v. First Nat=l Bank of Bellville, 753 S.W.2d 248, 251 (Tex. App.CHouston [1st Dist.] 1988,
writ denied);Long Bell Lumber Co. v. Miller, 240 S.W.2d 405, 406 (Tex. Civ. App.CAmarillo 1951, no writ). 

Generally, whether a piece of property qualifies as a homestead is a fact question.  Brown v. Bank of Galveston, Nat=l Ass=n, 963 S.W.2d 511, 515 (Tex. 1998); see Sims v. Beeson,
545 S.W.2d 262, 264-65 (Tex. Civ. App.CTyler 1976, writ ref=d n.r.e.) (testimony on issue of homestead raised fact question); Prince v. North State Bank of Amarillo, 484 S.W.2d
405, 409-10 (Tex. Civ. App.CAmarillo 1972, writ ref=d n.r.e.) (Aa review of all the circumstances indicates that the uncorroborated testimony is not conclusive that the property was
a part of the homestead as a matter of law, but presents a fact issue for determination@).  Likewise, abandonment of a homestead is a fact question.  Long Bell Lumber, 240 S.W.2d
at 406.



Summary Judgment Evidence


The parties submitted as evidence Wesch=s affidavit and Majeski=s responses to Wesch=s request for admissions.  Wesch and Majeski agreed that two houses and two mobile homes
are currently being rented to tenants; the billboard is rented by a third party; three mobile homes and two houses are vacant and uninhabitable; old cars and other items belonging to
Majeski and one of his tenants are located on vacant areas, in a large work/storage area, and in a storage unit.  Wesch averred that the service station is being rented to third parties;
that one mobile home lot is being used by Majeski=s grandson; and that Majeski uses one of the uninhabitable houses as storage.  Majeski agreed that his grandson lives on a mobile
home lot and that the service station is being used by third parties for commercial purposes, but denied that his grandson or the service station tenant is paying rent. Majeski said the
service station tenants instead help around the property.  Majeski also stated that the fence between the Bishop Center and the rest of the property was Atemporary.@



Discussion

The trial court correctly held and Wesch does not dispute that the Bishop Center and its surrounding parking lot and fenced yard qualify as Majeski=s urban homestead.  Majeski and
his wife lived in and operated the Bishop Center as their livelihood, he continues to do so today, and the operation of the bar requires Majeski=s time, attention, and labor.  Thus,
Majeski may claim the Bishop Center and its immediate surrounds as homestead.  See Tex. Const. art. XVI, ' 51; Tex. Prop. Code Ann. '41.002(a) (West 2000).  The only question,
therefore, is whether Majeski is entitled to claim as his homestead any or all of the property beyond the fence behind the Bishop Center.  We hold that the trial court erred in finding
that, as a matter of law, Majeski was not entitled to claim any of the land behind the fence as his homestead.  


Before 1999, an urban property owner could claim both a business homestead and a residential homestead.[2]  See Miller v. Menke, 56 Tex. 539, 550-51 (1881).  In 1999, the
constitution was amended to do away with the separate urban business homestead.  See Tex. Const. art. XVI, ' 51.  Now, a person may claim only one urban homestead up to ten
acres in size and consisting of a lot or contiguous lots Aused for the purposes of a home, or as both an urban home and a place to exercise a calling or business.@ Id.; Tex. Prop.
Code Ann. '41.002(a); see generally Christopher John Kern, Goodbye Texas Urban Business Homestead: An Analysis of the November 1999 Amendment to Article XVI, Section 51 of
the Texas Constitution, 52 Baylor L. Rev. 663 (2000).  

As originally proposed, the 1999 amendment would have eliminated the Acalling or business@ language from the provision.  Tex. S.J. Res. 22, 76th Leg., R.S. (1999) (introduced
version).  The original proposal would have provided homestead protection to property up to ten acres, contiguous, and used for purposes of a home, without addressing the issue of
business activities being conducted on the property. Id.  However, the amendment as enacted retains the old Abusiness or calling@language, which Wesch argues shows a legislative
intent to retain the requirements applied to business homesteads before the 1999 amendment.


Texas courts have long defined what qualifies as a Abusiness or calling@ when interpreting the original homestead provisions. A calling embraces Aall such employments as by
course of study or apprenticeship in any of the learned professions, liberal arts, or mechanical occupations, a person has acquired skill or ability to follow, and which has become
practically a matter of personal skill.@  Shyrock & Rowland v. Latimer, 57 Tex. 674, 677-78 (1882).  A business occupies a property owner=s time, attention, or labor for purposes of
profit or improvement.  Id. Renting or leasing property has generally not been considered a business or calling, even if rental income is an individual=s sole source of income.  See
Mays v. Mays, 43 S.W.2d 148, 152 (Tex. Civ. App.CBeaumont 1931, writ ref=d); Lyon v. Files, 110 S.W. 999, 1001 (Tex. Civ. App. 1908, no writ); Angus S. McSwain, The Texas
Business Homestead in 1990, 42 Baylor L. Rev. 657, 670 (1990).  Courts have instead viewed rental property as an investment that does not take up a large portion of the property
owner=s time, labor, or attention.  See In re Kang, 243 B.R. 666, 669 (Bankr. N.D. Tex. 1999); C. D. Shamburger Lumber Co. v. Delavan, 106 S.W.2d 351, 357 (Tex. Civ.
App.CAmarillo 1937, writ ref=d).  Temporarily renting homestead property to another, however, does not change the property=s homestead character.  Tex. Const. art. XVI, ' 51.


Assuming that the traditional business homestead requirements apply under the new constitutional provision,[3]the evidence does not establish as a matter of law that none of the
property behind the fence was Majeski=s homestead.  Majeski and his wife claimed and received a homestead exemption on the entire 5.851 acres, and the evidence does not show
that anything has changed in the use of the property since Majeski=s wife=s death.  The evidence shows that some portion, indeed a substantial portion, of the land behind the fence is
either not in use at all or is used by Majeski for storage of his personal items and for his own use.  The evidence is unclear about exactly what percentage of the property behind the
fence is actually rented.  Majeski acknowledged renting four housing units, but stated that several of the other houses or mobile homes are not rented and in fact are
uninhabitable. Majeski contradicted Wesch and asserted that the service station was used by a third party who did not pay rent. 


Under the trial court=s determination, the fence that Majeski and his wife erected between the Bishop Center and the remainder of the lot is the dividing line between what is
homestead and what is not.[4]  This designation is arbitrary and begs the question of whether the line would shift if, on a whim, the Atemporary@fence had been placed ten feet in
either direction or had been torn down altogether.  Further, Majeski=s statements contradict some of Wesch=s assertions, thus raising fact issues, and even the uncontradicted
evidence does not establish as a matter of law that Majeski=s homestead interest in all of the land behind the fence should be forfeited.  Instead, there is a question of fact as to what
portion of the tract, some of which is used by Majeski for storage or is vacant, is deserving of homestead protection. 


It was Wesch=s burden to show exactly what portions of the property, if any, were not subject to Majeski=s claims of homestead.  See Canales v. Oliver, 322 S.W.2d 411, 413 (Tex.
Civ. App.CSan Antonio 1959, writ ref=d n.r.e.) (Aappellant, having undertaken to show that portions of said lot had been abandoned for homestead purposes and converted to the use
of the rent houses, was charged with the burden of proving just what part of the homestead had been abandoned@).[5]  Wesch has not carried that burden, nor has she shown as a
matter of law that Majeski may not claim any of the property lying behind the fence as homestead.  See Brown, 963 S.W.2d at 515.  We therefore reverse the trial court=s order as far
as it finds that Majeski may not claim any of the land beyond the fence as his homestead.



Conclusion

We hold that the trial court=s order is final and appealable and we overrule Wesch=s motion to dismiss Majeski=s appeal.  We affirm the portion of the trial court=s order finding
that Bishop Center and its surrounding parking lot and yard are Majeski=s homestead.  We reverse the order so far as it finds that the property beyond the fence is not subject to
homestead protections, and we remand the cause to the trial court for further proceedings.[6]





__________________________________________

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: February 3, 2005



[1]  An affidavit must be based on the affiant=s personal knowledge and must state that the recited facts are true.  Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994); see Tex.
R. Civ. P. 166a(f).  Any qualification of the affiant=s personal knowledge will invalidate the affidavit.  See Humphreys, 888 S.W.2d at 470-71; Geiselman v. Cramer Fin. Group,
Inc., 965 S.W.2d 532, 537 (Tex. App.CHouston [14th Dist.] 1997, no pet.).

[2]  Formerly, an urban homestead consisted of a Alot or lots amounting to not more than one acre of land@ and Aused for the purposes of a home, or as a place to exercise the calling
or business of the homestead claimant.@ Tex. Const. art. XVI, '51 (amended 1999).

[3]  It seems contrary to the requirement of liberal homestead interpretation to hold that the amended provision continues to impose archaic requirements on the type of commercial
use made of property.  See Hughes v. Team Bank (In re Hughes), 172 B.R. 205, 210 n.4 (Bankr. N.D. Tex. 1993) (observing that restrictive view of Abusiness@ used more than a
century ago has evolved into more modern conception of business); see also Postal Sav. & Loan Ass=n v. Powell, 47 S.W.2d 343, 352 (Tex. Civ. App.CEl Paso 1931, writ ref=d)
(stating that Acalling@ and Abusiness@ in homestead provisions were broadly defined and meant to Aembrace every legitimate avocation in life by which an honest support for a
family may be obtained@).  Case law excluding rentals from homestead protection, generally dating to the early 1900s, both seems to comprehend a different business environment
than the one that has evolved and concerns the earlier constitutional exemption, which provided two kinds of urban homestead.  See Hughes, 172 B.R. at 210 n.4 (quoting In re Krug,
102 B.R. 98, 99 n.2 (Bankr. W.D. Tex. 1989)) (AIt is unlikely the restrictive interpretation of the term >business= espoused >by the Justices of the Texas Supreme Court a century
ago contemplated the dramatic shift of service-oriented paper shuffling that marks so much of modern day callings.=@). Now that the constitution permits only one urban homestead
combining business and residence, and given the modern form Abusiness@ has taken, it is not clear that drawing a distinction between rental income and income earned by a
traditionally defined Abusiness@ or Acalling@ continues to be useful. 

 

Instead, it is a reasonable argument that the provision was changed to assure that land owners would not lose homestead status if they used their residences for commercial purposes. 
Under this view, a person could claim property used as a home, whether or not it is also used for business, calling, or even investment purposes.  See Hearings on Tex. S.J. Res. 22
and S.B. 496 Before the Senate State Affairs Comm., 76th Leg., R.S. (Mar. 11, 1999) (Some owners discovered their business homesteads only when they sought to use property as
collateral; Stewart Title Guaranty Company representative stated that amendment Awon=t affect your ability to have a business homestead where you have your home and it won=t
let the business aspect of your ten acres destroy your residential homestead.  So it has two purposes.@). 

[4]  Under Wesch=s argument, if Majeski had lived and worked in the Bishop Center and left the remainder of the property vacant, the full 5.851 acres would be considered his
homestead, but his renting of part of the land divests him as a matter of law of his homestead rights to the entire portion of the property beyond the fence.  Further, we note that
Wesch asserted that Majeski was committing Awaste@ by allowing some of the structures to fall into disrepair and leaving vacant land that would be suitable for mobile homes.  It
seems that Wesch would punish Majeski for failing to fully rent the property and yet deprive him of his homestead rights if he did.

[5]  See also City of Amarillo v. Loden, 22 S.W.2d 969, 970 (Tex. Civ. App.CAmarillo 1929, no writ) (AIf the property or any part of it was rented and thereby abandoned, it rested on
the plaintiff to show the extent of such abandonment.  There is no proof showing the size of the building which was rented, no proof of a fence or other means of segregating it from
the balance of the lot, and nothing in the record to enable the trial court to fix any arbitrary line by which the property comprising the homestead could be separated from the rented
property. Hence, in the absence of such proof, the trial court could not have decreed that any part of said lot was subject to the plaintiff=s lien by reason of such abandonment by
renting.@).  Here, there was a fence, an Aarbitrary line,@but the area behind the fence was not used exclusively for rental purposes and instead was used in part  by Majeski for his
personal purposes.

[6]  Having held that there is a question of fact as to the homestead status of the portion of the property that lies beyond the fence, we need not address Majeski=s issue asserting that
Wesch did not properly raise the grounds on which the trial court relied in granting summary judgment.